**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin H Rindlisbacher, *et al.*, | No. CV-18-01131-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Steinway & Sons Incorporated, | |
| Defendant. | |

At issue is Defendant Steinway, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 26, MTD 1), to which Plaintiffs Kevin and Jami Rindlisbacher filed a Response (Doc. 34, Resp. 1) and Defendant filed a Reply (Doc. 36, Reply 1). Also at issue is Defendant's Motion to Dismiss Plaintiff's breach of contract claim (Doc. 52, MTD 2), to which Plaintiffs filed a Response (Doc. 58, Resp. 2) and Defendant filed a Reply (Doc. 60, Reply 2). The Court has reviewed the parties' briefs and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court denies in part and grants in part Defendant's Motions to Dismiss.

**I.    BACKGROUND**

In the Third Amended Complaint (Doc. 23, TAC), the operative Complaint,[1] Plaintiffs allege the following facts. Plaintiffs have been in the retail piano business for 35

---

[1] On April 12, 2018, Plaintiffs filed their Complaint alleging nondisclosure or constructive fraud, fraudulent misrepresentation and fraudulent omissions by Defendant. (Doc. 1, Compl.) Plaintiffs have since amended their Complaint several times. The relevant fraud claims are reflected in the Second Amended Complaint and the Third Amended

years. (TAC ¶ 32.) In 2002, Plaintiffs approached Defendant's Western District Sales Manager, Mr. Snyder, to inquire about becoming a Steinway & Sons ("Steinway") dealer in Tucson, Arizona. (TAC ¶ 34.) Instead, in October 2006, Plaintiffs became Defendant's Spokane, Washington dealer with the alleged advisement, counseling, and assistance of Mr. Snyder. (TAC ¶¶ 38–40.) From 2007 until July 2017, Plaintiffs operated the Spokane dealership and exceeded the cumulative annual sales performance goals that the parties agreed to by about 25% for all pianos and 89% for upright pianos. (TAC ¶ 43.)

At Defendant's September 2010 dealer conference in Chicago, Plaintiffs learned that Defendant needed a dealer in the Phoenix market. (TAC ¶ 20.) Plaintiffs met with Mr. Snyder in Scottsdale to see the area and discuss becoming Defendant's Phoenix market dealer. (TAC ¶ 43.) During that meeting, Mr. Snyder allegedly communicated "that the Phoenix Market was capable of selling 75 Steinway & Sons grand pianos per year" but that "45 Steinway & Sons pianos per year was a reasonable number for sales in the Phoenix Market." (TAC ¶¶ 56–57.)

Later, at Mr. Snyder's suggestion, Plaintiff visited Defendant's store in Hollywood, California because Mr. Snyder told them that the Phoenix store followed the Hollywood store's "recipe." (TAC ¶ 56.) After visiting the Hollywood store, Plaintiffs expressed concerns to Mr. Snyder about the demographic differences between Hollywood, Phoenix and Spokane; particularly, Plaintiffs noted the disparate average household incomes of each location. (TAC ¶¶ 60, 62.) Nonetheless, on November 23, 2010 Mr. Synder emailed Plaintiffs the Phoenix Dealer Agreement, which included the annual sales performance goals Defendant found reasonable for Maricopa County. (TAC ¶¶ 64–66.) Mr. Snyder explained that Defendant would not change its Dealer Agreement. (TAC ¶ 68.) Plaintiffs signed and returned the documents to Mr. Snyder.

On March 1, 2014, Plaintiffs leased a Scottsdale storefront at Defendant's instruction, despite Plaintiffs' concerns about "the small size, high cost per square foot,

---

Complaint (Doc. 48, TAC), which also includes a breach of contract claim. The Third Amended Complaint is now the operative Complaint.

and seven-year term of the Scottsdale Fashion Square." (TAC ¶ 70.) Plaintiffs allege that they renovated as Defendant requested, participated in Defendant's training and educational programs, implemented the techniques that had been successful in the Spokane market, and regularly communicated with Mr. Snyder. (TAC ¶¶ 56–57.) However, from December 2010 through July 2017, Plaintiffs' unit sales of Steinway grand pianos were about 30% of the cumulative reasonable annual sales performance goals established by the Dealer Agreement. (TAC ¶ 80.)

During the time that Plaintiffs operated the Phoenix dealership, they attended a national Steinway Dealer Meeting, where they spoke with the previous Phoenix dealer, Mr. Eric Schwartz. (TAC ¶ 109.) Mr. Schwartz told Plaintiffs that between 2005 and 2010, the Phoenix dealership sold about ten to fifteen grand pianos per year—nowhere near the estimate that Defendant had provided to Mr. Schwartz at the outset of their relationship. (TAC ¶ 112.)

After continued poor sales, Defendant terminated Plaintiffs' Phoenix Market Dealership on March 21, 2017, effective July 1, 2017. (TAC ¶ 91.) Plaintiffs now allege nondisclosure or constructive fraud (Count One), fraudulent representations and omissions (Count Two), and breach of contract (Count Three). Defendant filed two Motions to Dismiss—one in response to Counts One and Two (Doc. 26, MTD 1) and a later one in response to Count Three (Doc. 52, MTD 2). The Court will evaluate both Motions in this Order.

## II. LEGAL STANDARD

When analyzing a complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. Analysis

The Court will first address Counts One and Two—Plaintiffs' fraud claims—and Defendant's first Motion to Dismiss. Defendant argues the following: 1) Plaintiffs' fraud claims are time-barred; 2) the Economic Loss Doctrine applies to limit available relief to that agreed upon in the Dealer Agreement; and 3) Plaintiffs fail to state a claim for fraud because the parties did not have a confidential relationship and there was no false representation of material fact.

### A. Fraud Claims (Counts One and Two)

#### 1. Statute of Limitations

Defendant first argues that Plaintiffs' fraud claims are time-barred under Arizona law. (MTD 1 at 8–11.) The Arizona statute of limitations period for fraud is three years from accrual. A.R.S. § 12-543. In Arizona, a cause of action for fraud accrues "when the defrauded party discovers or with reasonable diligence could have discovered the fraud." *Mister Donut of America, Inc. v. Harris*, 723 P.2d 670, 672 (Ariz. 1986). "As such, it may begin to run before a person has actual knowledge of the fraud or even all the underlying details of the alleged fraud." *Id.* (quoting *Coronado Development Corp. v. Superior Court*,

678 P.2d 535, 537 (Ariz. Ct. App. 1984)). Ordinarily, "[w]hen discovery occurs and a cause of action accrues are . . . questions of fact for the jury." *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998). But courts may dismiss a complaint "[i]f the running of the statute is apparent on the face of the complaint." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)).

Here, the running of the statute of limitations period is not apparent from the face of the Complaint. Defendant argues that Plaintiffs' claim accrued in 2010, when they "could have learned about actual historical market sales and business prospects . . . had they exercised any sort of reasonable due diligence, including obtaining sales numbers from the prior Steinway dealer in Phoenix." (MTD 1 at 9.)[2] Failing that, Defendant argues that, at some point between 2011 and 2014, Plaintiffs "had knowledge of facts that would make a reasonably prudent person suspicious that actual historical sales were less than performance goals and market projections." (MTD 1 at 10.)

In response, Plaintiffs argue that they "were put on notice triggering investigation on [May 27, 2015], when Steinway's prior Phoenix dealer [Mr. Schwartz] told Plaintiff[s] [his] actual sales of Steinway & Sons grand pianos had been far less than the 45 Steinway pianos represented to be a 'reasonable annual sales performance goal.'" (Resp. 1 at 12.) And before 2015, Plaintiffs maintain that they could not reasonably have discovered the alleged fraud because Defendant's "confidential relation and its superior knowledge relieved Plaintiffs of any duty to investigate for fraud prior to [May 27, 2015]; and beginning in 2011 and continuing through 2017, [Defendant] concealed its fraud from Plaintiffs." (Resp. 1 at 15.)

Despite Arizona courts' application of the discovery rule, it "does not allow [a plaintiff] to profess longstanding ignorance when a reasonable investigation . . . would have alerted her to what she now alleges to have been [Defendant's] misconduct many

---

[2] Notably, Defendant argues that Plaintiffs could have spoken in person with Mr. Schwartz about the Phoenix market potential when Mr. Rindlisbacher visited him in in September 2010 to learn more about the dealership opportunity. (Mot. at 10.)

- 5 -

years earlier." *Isgro v. Wells Fargo Bank*, 2019 WL 273373 at *4 (Ariz. Ct. App., Jan. 22, 2019). Thus, Defendant is not misguided in its argument that the discovery rule may apply to bar Plaintiffs' claims because reasonable investigation could have revealed the inaccuracy of the sales projections much earlier than 2015. *See Doe*, 955 P.2d at 961 ("A plaintiff need not know all the facts underlying a cause of action to trigger accrual . . . . But the plaintiff must at least possess a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury.").

But "[w]hen discovery occurs and a cause of action accrues are usually and necessarily questions of fact," and the Court declines to dismiss Plaintiffs' claims based on these questions of fact at a stage where it must take as true the facts set forth in Plaintiffs' Third Amended Complaint. *Id.* Application of the discovery rule is entirely dependent on an evaluation of when a "plaintiff has reason to know 'by the exercise of reasonable diligence' that defendant harmed her." *Floyd v. Donahue*, 923 P.2d 875, 878 (Ariz. Ct. App. 1996). A determination of Plaintiffs' reasonableness is best left to a later stage. *Anson v. Amer. Motors Corp.*, 747 P.2d 581, 582 (Ariz. Ct. App. 1987) (finding that a "trial court should not grant a motion to dismiss unless it appears certain plaintiff will not be entitled to relief under any set of facts susceptible of proof under the claims stated").

At this stage, the bar that Defendant must clear—proving there is no plausible set of facts under which Plaintiffs could have been slow to discover alleged wrongdoing—is simply too high. The question of when Plaintiffs reasonably should have discovered any alleged fraud must be left to a stage of the case when evidence reveals Plaintiffs' efforts to investigate and Defendant's responses to those efforts.

### 2. The Economic Loss Doctrine

The Court turns next to Defendant's argument that Plaintiffs' fraud claims are precluded under the Economic Loss Doctrine. (*See* MTD 1 at 11–14.) Plaintiffs argue that Arizona courts do not apply the doctrine as broadly as Defendants contend, nor does the doctrine account for Plaintiffs' alleged tort claims. (Resp. 1 at 15–17.)

In Arizona, the economic loss doctrine is a "common law rule limiting a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or other property." *Flagstaff Affordable Hous. Ltd. P'ship v. Design Alliance, Inc.*, 223 P.3d 664, 667 (Ariz. 2010). The rule's purpose is "to encourage private ordering of economic relationships and to uphold the expectations of the parties by limiting a plaintiff to contractual remedies for the loss of the benefits of the bargain." *Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1050 (D. Ariz. 2010).

Here, Defendant argues that the Economic Loss Doctrine applies "because the parties bargained in contract for the risks that form the basis of Plaintiffs' claims – that the sales performance goals were reasonable." (MTD 1 at 13). Defendant notes specific provisions within the Agreement that it believes support application of the Economic Loss Doctrine. (MTD 1 at 5–6.)

But the Economic Loss Doctrine does not bar all tort claims that seek only economic damages. *Id.* Arizona courts typically apply the economic loss rule only in the context of product liability or construction defect cases. *See Flagstaff Affordable Housing*, 223 P.3d at 667. Courts applying Arizona law have recognized that the doctrine should not "be applied as a blanket restriction precluding tort-based lawsuits by plaintiffs who have suffered solely economic loss," because to do so would nullify causes of action that are well-recognized in Arizona, like "business torts, including legal malpractice and fraud, [which] among others, exist solely to redress pure economic loss." *Evans v. Singer*, 518 F. Supp. 2d 1134, 1139 (D. Ariz. 2007). Here, Plaintiffs' fraud claim falls among that class of financial torts, where there may be no harm to physical property and a cause of action exists only to compensate for financial losses.

While the Court recognizes that the scope of the Economic Loss Doctrine is not crisply defined by Arizona state courts, little support exists for the argument that Arizona courts intend to expand the rule outside of the context where it is traditionally applied. In addition, the Ninth Circuit Court of Appeals has observed that, in cases applying the rule "outside the product liability context, the [economic loss] doctrine has produced difficulty

and confusion." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 874 (9th Cir. 2007). Federal courts are not free to expand the existing scope of state law without clear guidance from the state's highest court and so the Court declines to do so here. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008).

### 3. Failure to State a Claim for Fraud

Defendant next argues that Plaintiffs fail to state a claim for either actual or constructive fraud.

In Arizona, fraud requires nine elements:

> (1) [a] representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; [and] (9) his consequent and proximate injury.

*Nielson v. Flashberg*, 419 P.2d 514, 517–18 (Ariz. 1966).

Defendant asserts that "[a] false representation must be a matter of fact which exists in the present, or has existed in the past and cannot be predicated upon the mere expression of an opinion." (MTD 1 at 14 (quoting *Dawson v. Withycombe*, 163 P.3d 1034, 1046 (Ariz. Ct. App. 2007).) As Defendant sees it, any agreement that the parties reached on sales goals was nothing more than an expression of Defendant's opinion that the Phoenix market was capable of sustaining such goals. (MTD 1 at 15–16.)

The Court agrees that Plaintiffs fail to point to affirmative representations made by Defendant that could constitute "representations" under a claim for actual fraud. Indeed, the only statements Plaintiffs point to are the reasonable annual sales performance goals, a list of potential institutional clients, and emails noting that the "Phoenix market is 'about one third the market size and potential of greater Los Angeles.'" (SAC ¶¶ 121–125.) None of these statements, on its own, constitutes anything more than speculation on the future success and clientele of the Phoenix dealership. What Plaintiffs are apparently trying to capture—a proposition rendered less effective by the confusing manner in which they label

the claims in their Second Amended Complaint—are omissions by Defendant that give rise to constructive fraud. These omissions may be actionable under such a theory.

Constructive fraud, which is "characterized by a breach of duty actionable at law irrespective of moral guilt, and arising out of a fiduciary or confidential relationship," does not require a speaker's intent that the hearer should rely on his representation. *McDonnell's Estate*, 179 P.2d at 241. But like other forms of fraud, constructive fraud requires "(1) a representation, (2) its falsity, (3) its materiality, [and] (4) the speaker's knowledge of its falsity or ignorance of its truth." *Taeger v. Catholic Family and Community Servs.*, 995 P.2d 721, 730 (Ariz. Ct. App. 1999). A "representation" for purposes of constructive fraud need not be a direct statement. Constructive fraud is "a breach of a legal or equitable duty which . . . the law declares fraudulent because the breach tends to deceive others, violates public or private confidences, or injures public interests." *Lasley v. Helms*, 880 P.2d 1135, 1137 (Ariz. Ct. App. 1994).

Thus, constructive fraud does not require any representation at all, but only some sort of "breach of a legal or equitable duty." *Id.* This same theory is reflected in the Restatement, where it is labeled as the tort of nondisclosure. Restatement (Second) of Torts § 551. Plaintiffs point to specific omissions that could constitute a breach of the duty that Defendant owed them, if the two shared a confidential relationship. *See id.* § 551(1) ("One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting is subject to the same liability to the other . . . but only if, he is under a duty to the other"). Plaintiffs allege nine omissions by Defendant, including that none of Defendant's dealers in the last ten years had sold 45 grand pianos, that a typical year only saw the sale of ten to fifteen grand pianos, and that the biggest institutional client on Defendant's list had not purchased a piano since the mid-1990s. (SAC ¶ 95.)

Defendant argues that it never had a confidential relationship with Plaintiffs—and thus never owed them a duty to disclose—because their Agreement "expressly limited the relationship to that of an independent contractor." (MTD 1 at 16.) But this view of "confidential relationship" is too restrictive. Arizona law requires only "something

approximating business agency, professional relationship, or family tie." *Rhoads v. Harvey Publ'ns, Inc.*, 700 P.2d 840, 847 (Ariz. Ct. App. 1984). And while "mere friendly relations are insufficient for this purpose," Plaintiffs' allegations are sufficient to show that the parties' business relationship was more than a friendly relation—they relied on each other in a business context. *Id.* Thus, it is plausible that the relationship, as described by Plaintiffs, falls among those relationships that Arizona courts recognize as confidential or fidcuiary. *See Rhoads*, 700 P.2d at 847 (listing cases). Moreover, "[w]hether a confidential relationship exists is a question of fact" and therefore should not be decided at the motion to dismiss stage. *Taeger*, 995 P.2d at 726.

Given that the parties plausibly shared a confidential relationship and therefore Defendant's omissions may constitute the breach of a duty, Plaintiff's claim for nondisclosure or constructive fraud (Count One) must survive. But Plaintiffs fail to state a claim for fraudulent representations and omissions (Count Two) because Plaintiffs fail to allege that Defendant made any actionable representations under that theory. Otherwise, any claim for fraudulent omissions is duplicative of Count One's constructive fraud claim. The Court thus will dismiss Count Two.

### B. Breach of Contract Claim (Count Three)

In Plaintiffs' breach of contract claim, they allege that Defendant breached the Dealer Agreement on the day the parties entered into it because "[a]t that time, Defendant well knew that . . . sales of Steinway & Sons grand pianos to its Phoenix market dealers had been a fraction of 45 such units." (TAC ¶ 159.) Defendant argues that Plaintiffs' breach of contract claim must be dismissed because 1) it is barred by the statute of limitations; and 2) it fails to state a claim because "Plaintiffs do not allege facts demonstrating a breach." (MTD 2 at 2.)

Before reaching the issue of whether Plaintiffs' breach of contract claim is time-barred, the Court must determine which state's law governs the application of a statute of limitations. Defendant argues that New York's law statute of limitations applies, while Plaintiffs advocate for the application of Arizona's statute of limitations.

As the forum state, Arizona's choice of law rules must be used to determine which state's statute of limitations applies. Arizona follows the Restatement (Second) of Conflict of Laws. *See Cardon v. Cotton Lane Holdings, Inc.*, 841 P.2d 198, 202 (Ariz. 1992) ("In Arizona, courts follow the Restatement to determine which state's law applies in a contract action."). Defendant argues that because the parties' Agreement included a choice of law provision, Restatement § 187 applies "the law of the state chosen by the parties to govern their contractual rights and duties." In the Agreement, the parties included a choice of law provision that designates New York law. Plaintiffs argue that, despite the parties' clear choice of law, Arizona law requires the Court to apply Restatement § 142 and that, as a result, Arizona's statute of limitations governs. While Plaintiffs are correct that Arizona applies § 142 to the choice of law analysis where the limitations period is at issue, that analysis is appropriate only if § 187 does not apply.[3]

Restatement § 187, titled "Law of the State Chosen by the Parties," provides that parties' choice of law

> will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state . . . and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

---

[3] Plaintiffs correctly characterize Arizona's general approach to a choice of law issue where § 187 does not apply, but the Court is not persuaded by the argument that § 142 should apply even where the parties included a choice of law clause in their contract. Indeed, the Ninth Circuit routinely defers to choice of law clauses, even where the standard Arizona analysis might yield different results on a statute of limitations issue. *See In re Vortex Fishing Sys., Inc.*, 277 F.3d 1057, 1069 (9th Cir. 2002) (finding that if the parties' claims were based on their agreement, which included a choice of law provision, Texas state law should apply, but "if the claims are not governed by [the Agreement], then the court must apply Arizona choice of law rules . . . [reflected by] the approach set forth in § 142 of the Restatement").

- 11 -

Here, New York has a substantial relationship to the parties because it is Defendant's principal place of business. And even if Arizona has a "materially greater interest" in the transaction than does New York, application of another state's statute of limitations is not necessarily contrary to any fundamental policy of the state with a greater interest. *See ABF Capital Corp. v. Osley*, 414 F.3d 1061, 1065 (9th Cir. 2005) (finding that "little if any conflict exists between application of New York law and fundamental California policy," even though plaintiff's claims would be timely under California's statute of limitations but time-barred under New York's). Because the parties selected New York state law to govern their Agreement, Arizona's deference to § 187 of the Restatement requires application of the New York statute of limitations.

New York has a six-year statute of limitations period for breach of contract claims. NY CPLR § 213(2). Because New York does not apply the discovery rule to breach of contract claims, Plaintiffs' claim accrued the day that any alleged breach occurred. *See Ace Securities Corp. v. DB Structured Prods. Inc.*, 36 N.E.3d 623, 628 (N.Y. Ct. App. 2015) (citing the principle outlined in *John J. Kassner & Co. v. City of New York*, 389 N.E.2d 985 (N.Y. Ct. App. 1993), that New York's "statutes of limitation serve the same objectives of finality, certainty and predictability that New York's contract law endorses"). Plaintiffs allege that Defendant breached the contract at the moment parties signed it, on December 1, 2010. (TAC ¶ 158.) More than six years passed between the alleged breach and Plaintiffs' original Complaint on April 12, 2018. Under the New York statute limitations, Plaintiff's breach of contract claim is time-barred, and the Court will thus dismiss it.

## IV. CONCLUSION

Plaintiffs have plausibly alleged a claim for constructive fraud or nondisclosure (Count One) that the Court cannot determine to be time-barred at this stage of the proceedings because application of the discovery rule demands a factual analysis. Plaintiffs fail to state an independent claim for fraudulent representations and omissions, and the Court will thus dismiss Count Two. The parties' choice of law renders Plaintiffs' breach of contract claim (Count Three) time-barred.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 26). Count Two for Fraudulent Representations and Omissions is dismissed. Defendant's Motion is denied as to Count One for Nondisclosure/Constructive Fraud.

**IT IS FURTHER ORDERED** granting Defendant's Motion to Dismiss Counts/Claims: Breach of Contract (Doc. 52), and Count Three is dismissed.

**IT IS FURTHER ORDERED** granting Plaintiffs' Consent Motion to Amend/Correct Complaint (Doc. 47).

Dated this 1st day of May, 2019.

Honorable John J. Tuchi
United States District Judge