**Lewis Roca Rothgerber Christie LLP**
201 East Washington Street, Suite 1200
Phoenix, AZ 85004

**Bruce E. Samuels** (State Bar No. 015996)
Direct Dial: 602.262.0216
Direct Fax: 602.734.3859
Email: bsamuels@lrrc.com
**Heather Stanton** (State Bar No. 033394)
Direct Dial: 602.262.0864
Direct Fax: 602.262.5747
Email: hstanton@lrrc.com

*Attorneys for Defendant Steinway, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin H. Rindlisbacher and Jami L. Rindlisbacher, husband and wife; and Piano Showroom of Arizona, Inc., an Arizona corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Steinway, Inc., a Delaware corporation,<br><br>Defendant. | No. 2:18-cv-01131-MTL<br><br>**MOTION FOR SANCTIONS** |

Summary judgment is the proper remedy when the undisputed material facts show that defendant is entitled to judgment as a matter of law. But in cases where a plaintiff brings claims based on allegations that the plaintiff objectively knows to be false, the issue is not merely a lack of proof—in such instances, the litigation process is being abused. Such is the case here. Therefore, in addition to moving for summary judgment,[1] Steinway requests sanctions under the Court's inherent authority and pursuant to Rule 11 against Plaintiffs.

Plaintiffs have, from the outset, lied about a key allegation, one which has allowed this case to proceed through discovery when it should not have. The key issue is whether the lawsuit was timely filed. Given that Steinway's alleged omission occurred in the fall

---

[1] Steinway will be filing two summary judgment motions, one on liability and the other on damages.

108955094.6

of 2010, and that Plaintiffs did not file this lawsuit until April 2018, the statute of limitations is an obvious issue. That issue, as detailed further below, turns on when Plaintiff Kevin Rindlisbacher either first became aware of historical sales performance in Maricopa County.[2]

At the time Plaintiffs filed the complaint, they included a claim for fraud, which is governed by a three-year statute of limitation. Recognizing that the case was filed more than seven years after the purported omission, Plaintiffs conveniently alleged in their complaint that they did not know about the prior dealer's sales performance until May 2015, which would mean their fraud claim, filed in April 2018, was timely by a few weeks. The Court granted Steinway's motion to dismiss the fraud claim, agreeing that Steinway made no "representation" required for fraud. (Doc. 74, at 8-9). The Court also dismissed Plaintiffs' breach of contract claim based on New York's statute of limitations. (Doc. 74).

As explained in Steinway's summary judgment motion, the remaining duty-based claims are governed by the two-year statute of limitations. A.R.S. § 12-542.[3] However, for purposes of this sanctions motion, even if Steinway were to assume that a three-year statute of limitations applies to this case (it does not), Plaintiffs have misled the Court

---

[2] It is undisputed that Plaintiffs were very much aware of their sales performance each year of the six plus years of their Steinway dealership contract, and that they severely underperformed each year as compared to their sales goals. They had every opportunity to determine whether they thought those sales goals were reasonable and, if not, to terminate the at-will contract. However, they made almost $2 million in profits. (Ex. E, at 260). Therefore, the sales goals were irrelevant to them. Even after Steinway terminated the dealership agreement, Plaintiffs pleaded with Steinway to reconsider. They only complained about being defrauded back in 2010 many years later, after Steinway exercised its right to terminate the dealership contract.

[3] The remaining claims are constructive fraud and nondisclosure based on Sections 551(2)(a) and (b) of the Restatement (Second) of Torts. (Docs. 74 and 113). Section 551(2)(a) imposes a duty of disclosure only when there is "a fiduciary or other similar relations of trust and confidence." Section 551(2)(b) imposed duty of disclosure about matters "known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading." Neither of these claims require proof of intent. Rather, they are duty-based claims, much like negligence, and subject to a two-year statute of limitations. This lawsuit was filed in April 2018. Thus, Plaintiffs' remaining claims are untimely according to Plaintiffs' claimed time of discovery in May 2015.

2

108955094.6

about when Rindlisbacher was aware of historical sales performance in his territory. Discovery has revealed that Plaintiffs knew of the prior sales performance in Maricopa County long before May 2015, and conveniently inserted the May 2015 allegation into their complaint simply to try to show compliance with the limitations period.

Consequently, Steinway seeks sanctions in the form of dismissal and reimbursement of fees and costs in defending Plaintiffs' time-barred claims. This motion is further supported by the Declaration of Bruce Samuels demonstrating that Plaintiffs have been provided the required safe harbor period under Rule 11, and have declined to dismiss this lawsuit. (Ex. A).

## I. Factual Background

Rindlisbacher is a piano retailer who has been in business since 1983 and has owned retail stores in three states. (Doc. 163 ¶¶ 32 and 44; Ex. B). Steinway manufactures pianos and, in various markets, distributes its pianos for retail sale through authorized dealers. In 2010, Steinway's authorized dealer for Maricopa County, Sherman Clay, closed its doors. As Sherman Clay was conducting its going out of business sale, Rindlisbacher, who was the Steinway dealer in Spokane, expressed his interest in also becoming the Steinway dealer in Maricopa County. (Doc. 163 ¶¶ 53, 54, and 58(A)). After conducting his due diligence and forming a new company, Rindlisbacher entered into an Authorized Dealer Agreement ("Dealer Agreement") with Steinway on December 1, 2010. (Ex. B).

The Dealer Agreement established sales performance goals that both Piano Showroom and Steinway agreed were reasonable. (Ex. B, Article III). As Rindlisbacher knew, Steinway had established those sales performance goals for all U.S. markets based on an index known as the Buying Power Index. (*Id*., Schedule A-1; *see also* Doc. 163 ¶ 119; Ex. C [Depo Ex. 47]; Ex. D [Depo Ex. 84]; Ex. E [KR Depo], at 136). The BPI index was created by a third party, Sales and Marketing Management, and published annually

3

through 2009.  (Ex. F [B. Snyder Depo], at 36-37; Ex. G [Depo Ex. 262]).

From December 2010 to July 2017, Plaintiffs performed at an average of thirty percent of the sales performance goals for Steinway & Sons® grand pianos.  (Doc. 163 ¶ 83).  They nonetheless made a profit every year as the Steinway dealer in Maricopa County.  (Ex. E [KR Depo], at 260).

The Agreement was terminable at will by either party upon written notice.  (Ex. B, Article XI).  In March 2017, Steinway exercised its right to terminate the Dealer Agreement, effective July 1, 2017.  (Doc. 163 ¶ 94).  Plaintiffs sued Steinway in April 2018.

Plaintiffs' claims arise from an alleged affirmative duty by Steinway to disclose historical sales performance in the territory.  Notably, Plaintiffs expressed no interest to Steinway in learning about the prior dealer's sales performance.  Despite expressing no curiosity about the prior dealer's sales, and despite knowing that the prior dealer had decided to close its store, Plaintiffs claim Steinway had an affirmative duty to disclose the historical sales by the prior dealer.  Plaintiffs assert that they are entitled to recover for $7.5 to $8.6 million of profits for Steinway manufactured pianos they never purchased from Steinway nor sold to customers.

## II. Plaintiffs Knew Historical Sales More Than Three Years Before Filing this Lawsuit

Plaintiffs asserted in their complaint that they did not discover historical sales performance until May 2015.  (Doc. 1 ¶ 114; Doc. 163 ¶ 113).  However, discovery has revealed three instances showing the contrary: (1) a January 2014 email that shows Rindlisbacher in fact knew the prior dealer's historical sales performance more than four years before filing this lawsuit, (2) a January 2011 news article published in the Arizona Business Gazette, quoting Rindlisbacher, and noting that the economy had hit Sherman Clay hard; and (3) a December 2011 news article in which Rindlisbacher discusses

4

historical sales. The two news articles were published less than a year after he became the authorized dealer for Steinway in Maricopa County, and more than seven years before he filed this lawsuit. Plaintiffs cannot legitimately controvert these facts. This lawsuit, filed more than three years later, has in fact been a sham from the outset.

The most telling evidence is a January 2014 email authored by Rindlisbacher. Rindlisbacher emailed Steinway about his monthly sales goals for 2014. (Ex. H [Depo Ex. 118]). The sales goal set forth in the dealer agreement for Steinway & Sons® grand pianos was 45 per year. (Ex. B, Schedule B). After outlining his goal to sell 25 Steinway & Sons® grand pianos that year, Rindlisbacher wrote: "While on paper this appears very obtainable to me, **this market hasn't sold this number of Steinway & Son's units in a very long time – at least 8 years**." (Ex. H, at RIN014836 (emphasis added)). Clearly, as of January 30, 2014, he was aware of historical sales, going back to 2006, per his own admission.

The January 2011 news article was published shortly after Rindlisbacher opened his store in Scottsdale. The article quoted Rindlisbacher extensively, and noted that the prior dealer, who had operated for five years, closed its store. (Ex. I [Depo Ex. 238]). "The economy hit the retailer hard as the number of customers able to pay $20,000 or more for one of the instruments decreased significantly," the article noted. (*Id.*). When asked about the article in his deposition, he acknowledged that he assumed that Sherman Clay would not have closed if it was profitable. (Ex. E [KR Depo], at 181-182). He was aware that the two prior Steinway dealers in the Phoenix area had closed their stores. (Ex. E [KR Depo], at 182-183).

The December 2011 news article also confirms that Rindlisbacher was aware that piano sales in the market had declined over the prior five years and that the prior dealer had operated at a loss. Specifically, the news article quotes Rindlisbacher extensively. He was "very happy" with his first year, despite having only ordered 71 pianos from Steinway

5

(with a sales goal of 234 pianos per year). (Ex. J, [Depo Ex. 120], at STEINWAY00345; Ex. K [Depo Ex. 113], at RIN012455 (noting shipments to Rindlisbacher of 43 pianos in 2011); Ex. L [Depo Ex. 101] (noting shipments to Rindlisbacher of 28 pianos in December 2010)). He stated that pianos sold in Phoenix had declined over the past five years. He was also aware that the prior dealer had operated at a loss for four years. (Ex. J, [Depo Ex. 120], at STEINWAY00345). At this point, his Arizona Steinway dealership had been open for approximately one year. This statement again shows that he was aware that the prior dealer had operated at a loss and that sales of pianos had declined in the past five years. At a minimum, he was on inquiry notice almost seven years prior to his filing of a claim.

A cause of action for fraud accrues when a person (1) discovers facts constituting fraud; (2) could have learned of the fraud by exercising reasonable diligence, whether or not the person actually learned of it; or (3) has knowledge of facts that would make a reasonably prudent person suspicious of fraud, thus putting him on inquiry notice. *Coronado Dev. Corp. v. Superior Ct.*, 678 P.2d 535, 537 (App. 1984); *see also Mister Donut of Am., Inc. v. Harris*, 723 P.2d 670, 672 (Ariz. 1986) (a fraud claim accrues "when the defrauded party discovers or with reasonable diligence could have discovered the fraud.").

Rindlisbacher was deposed on July 17, 2019. When specifically asked about the inconsistency between his statement about historical sales in the January 2014 email and the allegation in this lawsuit that he only became aware of historical sales in May 2015, Rindlisbacher offered no logical or coherent explanation. (Ex. E, at 207:22-214:8). He claimed that the January 2014 statement was just a "guess," even though the email was not qualified with anything that would show or indicate that he was guessing. He testified:

> Q. Is it a statement of a guess?
> A. Yes, it's a statement based on a guess.
> Q. So you were -- you were stating a fact about which you knew nothing at the time?
> A. It was a guess.
> Q. In other words, you were lying to Bob Snyder?
>     MR. MORRILL: Objection. Misstates the testimony, argumentative, objection to form.
> BY MR. SAMUELS:
> Q. Were you lying to Bob Snyder?
> A. I was guessing.
> Q. Does it say anything in this email about a guess? Yes or no?
> A. No, it does not. But that doesn't mean --
> Q. That's all I need from you. Thank you.

(*Id.*, at 213).

When asked about the December 2011 news article, he also deflected and stated that every market had declined. (Ex. E, at 217-219, 219:3-219:14). He testified:

> On the right-hand margin, there's a -- continuing on, there's a paragraph that reads, "In addition to high overhead, pianos sold in Phoenix declined over the past five years, Rindlisbacher said. Those numbers mirror what's happening nationally," right? Did I -- did I read that accurately?
> A. Yes.
> Q. So you indi- -- you indicated to this reporter that the Phoenix market had declined in terms of pianos sold over the past five years, correct?
> A. I think every market in the United States had declined.
> Q. Okay. And then you put in quotes -- at least this quote is attributed to you, "To put it -- to put it in perspective, more than 30 years ago over 300,000 pianos were sold each year. Last year, they were less than 40,000 sold."
> Was that a true statement at the time?
> A. That sounds accurate to me at that time.

(*Id.*, at 219).

According to Rindlisbacher's own email and the news articles, Plaintiffs falsely allege in their complaint that they did not learn about the market's historical sales until May 2015. This false allegation has wrongly forced Steinway to incur substantial attorneys' fees and costs to defend this litigation. The false allegation has also burdened this overly burdened Court. These burdens based on Plaintiffs' false allegation ought to be addressed through sanctions against Plaintiffs.

### III.   Dismissal is an Appropriate Sanction Under the Court's Inherent Authority

Courts have the inherent power to impose sanctions for bad faith conduct by litigants. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). District courts have the power to "award attorney's fees for one party and against another (and in exaggerated cases directly against counsel) where an unfounded action or defense is brought or maintained in bad faith, vexatiously, wantonly, or for oppressive reasons." 6 J. Moore, W. Taggart & J. Wicker, MOORE'S FEDERAL PRACTICE ¶ 54.78[3] (1987); *see also Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980).

Here, Plaintiffs filed this lawsuit knowing that Rindlisbacher was aware of the market's historical sales in 2011 and 2014. Plaintiffs avoided a Rule 12(b)(6) dismissal based on the statute of limitations by asserting, falsely, that they were unaware of historical sales until May 2015.

### IV.   Dismissal Under Rule 11 is Also an Appropriate Sanction

"The central purpose of Rule 11 is to deter baseless filings." *Newton v. Thomason*, 22 F.3d 1455, 1463 (9th Cir. 1994). It provides for the "imposition of sanctions when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1177 (9th Cir. 1996). Frivolous filings are "those that are both baseless and made without a reasonable and competent inquiry." *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997).

8

Claims that a reasonable investigation of the facts would reveal to be time barred are appropriately dismissed under Rule 11. *See, e.g.*, *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997) (affirming dismissal and Rule 11 sanctions when a "reasonable investigation would have revealed that the . . . claim was barred by the statute of limitations."); *Valladares v. Superior Court*, 37 F.3d 1507 (9th Cir. 1994) (affirming Rule 11 sanction of dismissal against claim that was clearly time barred); *United States v. Gavilan Joint Cmty. Coll. Dist.*, 849 F.2d 1246, 1250-51 (9th Cir. 1988) (finding Rule 11 sanctions appropriate when action was subject to a known statute of limitations defense and plaintiff had no reasonable basis in law on which to challenge the defense).

The court has also "imposed Rule 11 sanctions where some error or admission by a litigant undermined his entire case at a stroke." *Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir. 1987). For example, in *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500 (9th Cir. 1986), MGIC sued for fraud but its own contemporary memorandum completely defeated its allegations of reliance. The Ninth Circuit held that the allegations could thus not have been believed to be "well grounded in fact" and merited the imposition of Rule 11 sanctions. *Id.* at 505.

Here, accrual is not a question of fact, but is rather a matter of law because "a litigant's own clear admission erase[d] the factual underpinning from some essential element of the litigant's pleading." *Greenberg*, 822 F.2d at 887. Rindlisbacher's email and the news article indisputably reveal that he was on inquiry notice or was aware that actual historical sales in Phoenix were less than the performance goals by January 2014 at the latest. The statute of limitations expired no later than January 2017, and Plaintiffs' claims to the contrary reflect bad faith.

The harm the Plaintiffs' baseless lawsuit has caused is not only to Steinway, but to this Court. "Rule 11 is designed to discourage unnecessary complaints and other filings,

for the benefit of the judicial system as much as of the defendants." *Szabo Food Services v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987).

"Unnecessary complaints sap the time of judges, forcing parties with substantial disputes to wait in a longer queue and condemning them to receive less judicial attention when their cases finally are heard." *Id.* Surviving a motion to dismiss based on false allegations should not prevent the imposition of Rule 11 sanctions. *See Int'l Union v. Aguirre*, 410 F.3d 297, 304 (6th Cir. 2005) (imposing sanctions after plaintiff survived motion for judgment on the pleadings); *Perry v. S.Z. Restaurant Corp.*, 45 F.Supp.2d 272, 274-75 (S.D.N.Y. 1999) (imposing sanctions on plaintiff after plaintiff's claims survived two summary judgment motions). Rule 11 obligations continue beyond the date the lawsuit is filed. When discovery reveals that a plaintiff's claims are no longer viable, the plaintiff cannot proceed without violating Rule 11. *Ideal Instr. v. Rivard Instr.*, 243 F.R.D. 322, 342 (N.D. Iowa 2007); Fed. R. Civ. P. 11, Advisory Committee Notes to 1993 Amendment ("a litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit").

**V.   Sanctions in the Form of Fees and Costs are Appropriate**

Plaintiffs filed a lawsuit that is time-barred, requiring Steinway to spend significant fees defending the claims. The original complaint was the improper pleading. (Doc. 1 ¶ 114). Notably, Plaintiffs' same false assertions have been repeated in each of the four amended complaints. (*See, e.g.,* Doc. 163 ¶ 113). Thus, all fees and costs incurred defending the case since the filing of the original complaint should be awarded as an additional sanction. *Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993) (awarding fees incurred defending case as a Rule 11 sanction).

10

**VI.   Conclusion**

Plaintiffs' claims are time barred.  Rindlisbacher's statements in an email and the two news articles demonstrate that he knew about the historical sales performance of his territory in 2011 and 2014.  Thus, this lawsuit had to be filed at the latest by 2017.  He alleged his discovery event took place in May 2015 so that his claims could survive the statute of limitations, when they do not.

Given that Plaintiffs filed the lawsuit over a year late, this entire proceeding has been a sham in an effort to extract many millions of dollars from Steinway by a disgruntled former dealer who had his pride hurt when Steinway terminated his at-will dealership contract.  Steinway respectfully requests that Plaintiffs' Fourth Amended Complaint be dismissed with prejudice.  If the Court grants this motion, Steinway requests additional sanctions in the form of fees and costs incurred defending this time-barred lawsuit.

RESPECTFULLY SUBMITTED this 20th day of March, 2020.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: /s/Bruce E. Samuels
Bruce E. Samuels
Heather Stanton
*Attorneys for Steinway, Inc.*

11

108955094.6

**CERTIFICATE OF SERVICE**

I hereby certify that on March 20, 2020 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

K. Layne Morrill  klaynemorrill@gmail.com

/s/Joye Allen<br>
Lewis Roca Rothgerber Christie LLP Employee

12

108955094.6