**Lewis Roca** Rothgerber Christie LLP
201 East Washington Street, Suite 1200
Phoenix, AZ 85004

**Bruce E. Samuels** (State Bar No. 015996)
Direct Dial: 602.262.0216
Email: bsamuels@lrrc.com

**Heather Stanton** (State Bar No. 033394)
Direct Dial: 602.262.0864
Email: hstanton@lrrc.com

*Attorneys for Defendant Steinway, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin H. Rindlisbacher and Jami L. Rindlisbacher, husband and wife; and Piano Showroom of Arizona, Inc., an Arizona corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Steinway, Inc., a Delaware corporation,<br><br>Defendant. | No. CV-18-01131-PHX-MTL<br><br>**STEINWAY'S RESPONSE TO PLAINTIFFS'** *DAUBERT* **MOTION TO EXCLUDE CERTAIN PROFFERED TESTIMONY OF DAVID A. SCHWICKERATH** |

Plaintiffs misconstrue the report of Steinway's rebuttal expert, David Schwickerath. Plaintiffs claim that Schwickerath is being offered to evaluate the effectiveness of Plaintiffs' performance as the Steinway dealer in Maricopa County from December 2010 until July 2017. They further assert that Schwickerath's testimony should be excluded because Schwickerath has no experience selling Steinway pianos and did not run a nationwide comparison of Plaintiffs' performance with all other Steinway dealers. This is a mischaracterization of Schwickerath's report and testimony, and exclusion is unsupportable as a matter of law.

Schwickerath's opinions are entirely appropriate as a *rebuttal* expert. He points out the various flaws regarding the report and testimony of Plaintiffs' damages expert, David Perry. All of Plaintiffs' objections to Schwickerath's testimony ignore the purpose for which the opinions and testimony are being presented. Schwickerath is highly qualified as

a damages expert, as Plaintiffs concede. (Doc. 221 at 2) (Schwickerath "has a masters' degree in accounting and finance and decades of experience determining economic damages flowing from alleged business torts."). This training and experience qualifies him to testify regarding the matters challenged here – the flaws and omissions in Plaintiffs' damages model.

## I.   Introduction

Plaintiffs' damages model, set forth in Plaintiffs' original complaint and affirmed by Perry, is relatively simple: Perry claims Plaintiffs would have generated over $6 million in gross annual revenue for six and a half years by selling 1,521 pianos, rather than the 443 pianos Plaintiffs actually sold. Plaintiffs actually received approximately $2 million in annual revenues. In short, Perry purports to have calculated the profits Plaintiffs would have made, had they reached their sales goals, and then subtracted the profits Plaintiffs actually made. His damages model, however, is deeply flawed, as Schwickerath points out.[1]

As Steinway's rebuttal expert, Schwickerath focuses his report on the errors in Perry's analysis, including the fact that Perry ignores key variables, which he is not free to ignore in attributing damages, and key facts, which he is not free to assume away. Schwickerath noted significant flaws in Perry's report, including that: (1) Plaintiffs' results in Spokane cannot be assumed to equate to success in Phoenix; (2) Perry's reliance on a comparison to Steinway's West Hollywood company-owned store is mistaken; and (3) other market issues cannot be ignored when creating the damages model. (Doc. 221-2 at 22-37; *see* Doc. 221 at 6 n.1 (not challenging testimony on these topics)). Plaintiffs challenge only the testimony relating to the actions and/or inactions of Plaintiff Kevin Rindlisbacher as a Steinway Dealer in Maricopa County. (Doc. 221-2 at 25-33). In other

---

[1] Steinway has previously filed a *Daubert* Motion seeking to exclude Perry's speculative and inadmissible opinions. (Doc. 223). Should the Court grant Steinway's motion, Plaintiffs' *Daubert* motion is moot.

111101351.3

words, Perry assumes that Rindlisbacher had no responsibility for improving his sales performance or for not meeting his sales goals. Plaintiffs' damages model would make Steinway liable for alleged profits based on the retail sale of over 1,000 pianos Plaintiffs never purchased from Steinway nor sold to any customer.[2]

Schwickerath summarized facts available in the record that represented factors Perry should have considered when creating his damages model. Schwickerath does not purport to opine on the effect these factors would have on Plaintiffs' damages model and does not create an alternative damages calculation. Nor is there any obligation for a rebuttal expert to come up with an alternative damages number. Rather, Schwickerath's opinion is that Plaintiffs' damages model is flawed, in part because Perry failed to consider factors that were obvious from the facts in the record. Perry either chose to ignore those facts or considered them and chose not to include them, either of which is improper. Contrary to Plaintiffs' assertion that Schwickerath's testimony relates to the "standard of performance of a reasonable Steinway dealer" (Doc. 221 at 12), Schwickerath simply observes various factors in the record that could have affected Rindlisbacher's piano sales, and thereby affect damages. His opinion is that the damages *model* is flawed without consideration of Rindlisbacher's actions and inactions.

Schwickerath's position as a rebuttal expert criticizing Plaintiffs' damages model is fairly common. For example, in *KW Plastics v. U.S. Can Co.*, 199 F.R.D. 687, 692 (M.D. Ala. 2000), the district court noted a nearly identical relationship between the two experts' opinions:

> In this case, McGowan [plaintiff's expert] intends to proffer a damages calculation report. Sherwin [defendant's expert] intends to criticize the report because it is not tied to any "real world" events. In other words, Sherwin is prepared to testify that, while McGowan's report implicitly assumes (or erroneously fails to consider) facts *X, Y,* and *Z,* McGowan's

---

[2] Plaintiffs' damages model is also the subject of Steinway's motion for summary judgment regarding damages. (Doc. 207).

3

111101351.3

analysis is seriously flawed if the jury does not accept *X, Y,* and *Z* as true. This is a well-accepted way to criticize damages estimates.

*Id.* The court held that Sherwin could not "testify as to *X, Y,* and *Z if he is making those statements to prove the matters asserted.*" *Id.* (emphasis in original). However, the rebuttal expert could "testify as to the flaws that he believe[d we]re inherent in a damages report that implicitly assumes or ignores the above facts" and his testimony would "help the jury evaluate McGowan's damages assessment." *Id.* The court held that the rebuttal expert could testify, and place in his expert report, his view of the relevant facts and whether he accepted or rejected the same. *Id.* Although the rebuttal expert's testimony was inadmissable to prove or disprove the facts being discussed, it was admissible to inform the jury of the basis of his report and his criticism of McGowan's estimate. *Id.* Such is the case here.

An expert witness's "[t]estimony is admissible under Rule 702 if [1] the subject matter at issue is beyond the common knowledge of the average layman, [2] the witness has sufficient expertise, and [3] the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion." *United States v. Winters*, 729 F.2d 602, 605 (9th Cir. 1984). Schwickerath's testimony satisfies all of the *Winters* elements. As a damages expert with decades of experience testifying as both a plaintiff's expert and as a rebuttal expert, Schwickerath is qualified to offer opinions on the reliability of Perry's analysis.[3] The testimony will assist the trier of fact in interpreting and properly weighing Plaintiffs' damages calculation by revealing problems in its assumptions and considerations, as the creation of economic damages models is beyond the knowledge of the average person. And Schwickerath's opinion is also reliable, as it is based on the methodology and logical standards commonly used by damages experts when calculating economic damages.

---

[3] Perry acknowledged that he also has never worked in a piano business or in a retail business. (Ex. A at 42-43).

4

111101351.3

## II. Schwickerath Is A Qualified Expert On Damages Models

Federal Rule of Evidence ("Rule") 702 states that an expert is qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Plaintiffs repeatedly concede that Schwickerath is a highly qualified damages expert (Doc. 221 at 2, 4, 7), but assert he is unqualified to offer his opinions on certain matters because he lacks experience "operating Steinway dealerships or evaluating their performance," (Doc. 221 at 8).

However, Schwickerath's report does not evaluate Rindlisbacher's performance as a Steinway dealer; it evaluates Perry's analysis and finds that Perry failed to consider Rindlisbacher's own performance, both in Spokane and Maricopa County. The record contains many examples of Steinway informing Rindlisbacher about what he could be doing differently to sell more pianos. There are other examples in the record of facts that show that Rindlisbacher did not actually ever reasonably expect to sell 234 pianos per year. He operated his business in Maricopa County as if he was in Spokane, a much smaller market with a much smaller sales goal. Perry's opinion is that because Rindlisbacher met his sales goal (34 pianos) in Spokane, it was reasonable for him to expect to meet his sales goal by selling 234 pianos per year in Maricopa County. Perry chose to ignore or reject evidence about factors that can affect a dealer's performance. His opinions and testimony attempt to make Steinway liable for Rindlisbacher's deficiencies. In short, Schwickerath's opinion relates to the factors, variables, and assumptions that must be considered when creating an economic damages model. Schwickerath's "knowledge, skill, experience, training, [and] education" more than qualify him to offer an opinion on this subject.

Consideration of all relevant factors that could potentially affect the damages calculation is a fundamental requirement for a reliable damages model, and this requirement is widely accepted among damages experts. As confirmed in the treatise

111101351.3

Perry relies upon in his expert report, "[t]he damage claim *must consider all other material factors* that could have affected the plaintiff's financial results." LITIGATION SERVICES HANDBOOK: THE ROLE OF THE FINANCIAL EXPERT § 4.5(e), at 25 (6th ed. 2017) (emphasis added). Schwickerath's opinions regarding the flaws in Perry's report are based on his failure to consider "all other material factors that could have affected" Plaintiffs' profitability, including Rindlisbacher's performance. Schwickerath's opinions are further supported by the treatise Perry favors, which notes, "[a]n expert who fails to explore key factors affecting company performance will be ill-equipped to assure the court that the defendant's actions have caused the damages suffered, thus weakening the causation argument and damages case." *Id.* § 4.6(e), at 34.

As noted in his resume, Schwickerath has consulted "on the determination of economic damages for over 30 years." (Doc. 221-2 at 41). He has determined and evaluated economic damages, lost profits, and valued companies in a variety of cases and industries, including retail. (*Id.*). Schwickerath's experience includes companies ranging from sole-proprietorships to Fortune 50 corporations. (*Id.*). Plaintiffs do not dispute that "Schwickerath qualifies as an expert in the calculation of economic damages flowing from business torts." (Doc. 221 at 7). Schwickerath opines on the fundamental flaws with Perry's damages calculation, which he is qualified to do under Rule 702.

In one of the few cases cited in their Motion, Plaintiffs assert that the Ninth Circuit's decision in *United States v. Chang*, 207 F.3d 1169 (9th Cir. 2000), supports Schwickerath's exclusion as unqualified. Not so. The expert in *Chang* was excluded because he only had "expert knowledge regarding the history of, and purpose for, the issuance of obligations like the Certificate," not in identifying counterfeit certificates. *Id.* at 1172. The Ninth Circuit affirmed the district court's finding that "the [only] fact in issue is the authenticity of [the Certificate and] whether such things were ever in fact validly issued was not relevant." *Id.* In contrast, Schwickerath has years of training,

111101351.3

education, and experience related to the exact subject of his opinion: the calculation of economic damages flowing from business torts and the factors an expert must consider when making that calculation. *Chang* is inapposite.

### III.    The Testimony Is Both Relevant And Reliable

"Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). Schwickerath's opinion meets the above criteria.

#### A.    Relevance

Plaintiffs describe their damages model as part (a), the profits calculated had Plaintiffs made their sales goals, minus part (b), the profits Plaintiffs actually made. (Doc. 221 at 10). Plaintiffs argue that Rindlisbacher's performance as the Maricopa County Steinway dealer is "not pertinent" to Perry's analysis. This argument is amazing for its brazenness. If Plaintiffs' position were true, they could have literally done little to nothing and be entitled millions more than the $7.5 million in damages from Steinway. They could have, for example, only opened for business one day per week or one hour per day.

Perry's opinion is that because Rindlisbacher was able to meet his sales goal of 34 pianos per year in Spokane from 2007 to 2009, that it was reasonable for him to expect to be able to meet the sales goals in Maricopa County of 234 pianos per year. (Doc. 221-1 at 10-11 (Perry "determined that Plaintiffs' reasonable expectations around the time they agreed to become the Phoenix dealer were that they would meet, if not exceed, the annual unit sales goals in the Phoenix Dealer Agreement."). Of course, how many pianos Rindlisbacher sold was largely subject to his own efforts and skills as a piano retailer, the skills of his staff, and other variables that Perry acknowledged. (Ex. A at 71; 217-220). Perry testified that based on his review of the documents provided to him by Plaintiffs'

7

counsel,

> Mr. Rindlisbacher has been in the piano industry for years, had a successful performance compared to sales goals in Spokane, was incentivized to do as well as he could in Scottsdale because he'd make more money if he sold more pianos. There's nothing to indicate that he wouldn't put his best performance into it and do what he could, and that's what his commitment to Steinway was.

(*Id.* at 220). Perry's testimony is that Rindlisbacher did everything he was supposed to do as a Steinway dealer. Thus, Rindlisbacher's actions and inactions are absolutely fair game in rebutting Perry's testimony.

In fact, Schwickerath's opinions relate to *this very issue* – Perry's failure to consider Rindlisbacher's actions and inactions and their potential impact on sales. Schwickerath does not offer an opinion on what Rindlisbacher should have done or what impact those actions would have had. His opinion states that the record shows evidence of issues that Perry should have factored into his analysis and that, having failed to include consideration of these issues, Perry's analysis is fundamentally flawed. "The most important factor in determining whether expert testimony will 'help' is the jury's need for expert testimony to accurately determine the facts." Wright & Gold, FED. PRACTICE & PROCEDURE § 6265.2, at 264 (2016). If Perry is permitted to testify, Schwickerath's testimony will help the jury evaluate Plaintiffs' damages model by pointing out the pertinent facts that Perry ignored.

Contrary to Plaintiffs' motion, Schwickerath's rebuttal report and testimony is relevant to both Plaintiff's claims and Steinway's defenses. Plaintiffs assert, for example, that mitigation is not an issue in this case, when in fact it is. *See Law v. Superior Court In & For Maricopa Cty.*, 157 Ariz. 147, 153-54 (1988). The related doctrine of avoidable consequences also applies. RESTATEMENT (SECOND) OF TORTS § 918.

The reality is that Rindlisbacher could have and should have mitigated or avoided his damages. Perry's report failed to include any of the various factors that could have resulted in reduced damages, as Schwickerath notes. For example, if Rindlisbacher had

targeted what he later confirmed was the right type of customer, he would have sold more pianos. If he had paid attention to the performance review letters, rather than refusing to read them, and actually implemented a balanced promotional plan, he would have likely sold more pianos. If he had hired more than two salespeople, the same number as he had in his small market Spokane store, he would have likely sold more pianos. If he had more effectively targeted institutions, he would have likely sold more pianos. Schwickerath's testimony is absolutely relevant to point out the various factors that Perry did not consider, which would have mitigated, if not eliminated, any purported damages.

Similarly, given that the remaining claims are duty-based, comparative fault is an issue. *See Aztlan Lodge No. 1 v Ruffner*, 155 Ariz. 163, 165-166 (App. 1987) (reversing jury verdict on negligent misrepresentation claim because trial court failed to instruct jury in defense of contributory negligence). Plaintiffs claim that they need not prove intent. (Docs. 34, 178). Comparative fault must therefore apply. Arizona's version of the Uniform Contribution Among Tortfeasor's Act provides that fault shall be determined when there is an "actionable breach of a legal duty, act or omission approximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all degrees, contributory negligence, [and] assumption of risk . . . ." A.R.S. § 12-2506(F)(2). The statute requires that fault be attributed to "all persons who contributed to the alleged injury . . . ." A.R.S. §12-2506(B). Plaintiffs' statement that comparative fault "is not a defense to fraud" does not apply because this Court has already ruled that Plaintiffs failed to state a claim for fraud. (Doc. 74). They cannot have the benefit of not having to prove intent unless they also are subject to comparative fault.

Schwickerath's rebuttal report and testimony is relevant to both Plaintiff's claims and Steinway's defenses and will assist the trier of fact in evaluating both.

### B. Reliability

Schwickerath's report does not draw a conclusion as to the sufficiency of

9

111101351.3

Rindlisbacher's performance; rather, it notes the issues that would impact an analysis of Plaintiffs' profitability. Because Plaintiffs' arguments on reliability relate entirely to their mischaracterization of Schwickerath's opinion, the arguments must fail.

Plaintiffs' *Daubert* motion centers on the idea that Schwickerath's opinion relates to how Rindlisbacher performed as the Maricopa County Steinway dealer, compared to other dealers. It does not. As discussed above, Schwickerath's opinion relates to the insufficiency of Plaintiffs' damages model, in part because Perry did not consider Rindlisbacher's performance, not compared to other dealers, but compared to his own actions and inactions set forth in the record. The heading to the portion of the report that Plaintiffs seek to exclude is entitled "Sterling Group Ignored Mr. Rindlisbacher's Own Responsibilities." (Doc. 221-2 at 25). Some of the facts that Schwickerath observed were ignored by Perry are set forth in the annual and semiannual performance reviews that Steinway issued to Rindlisbacher. (Doc. 221-2 at 26-28). Mr. Perry also ignored the testimony of Steinway District Manager Robert Snyder regarding a balanced promotional plan that he encouraged Rindlisbacher to develop. (Doc. 221-2 at 28-29).

Other facts in the record ignored by Perry come from Rindlisbacher's own writings. For example, Schwickerath observes a fact that Perry ignored: Rindlisbacher's testimony that it was his responsibility to create and implement a plan to promote Steinway pianos. (Doc. 221-2 at 26). Perry also ignored, as observed by Schwickerath, Rindlisbacher's statement that he realized in 2017, six years after becoming the Steinway dealer, "that a lot of my marketing and time investment have been spent on trying to create sales in the areas of least opportunity for success." (Doc. 221-2 at 30). Schwickerath further observed that Perry ignored the turnover Rindlisbacher experienced among sales people, a fact that was also in the record. (Doc. 221-2 at 32). And Schwickerath noted that Perry ignored the fact that Rindlisbacher had set a sales goal of $1 million per year per salesperson, but only had two sales people. Thus, Schwickerath observed that to generate $6 million in revenue, as

10

Perry opined was a critical part of his damages calculation, Rindlisbacher would have required "several additional salespeople." (Doc. 221-2 at 32). Perry ignored that, rather than employing more salespeople in the exponentially larger market of Maricopa County, Rindlisbacher employed the same number of salespeople as in his Spokane Steinway store. (Doc. 221-2 at 33).

Plaintiffs' motion seeks to bar Schwickerath from testifying about all of the above facts, and others, that Perry ignored or rejected, which are indisputably part of the record. Plaintiffs' expert, however, is not free to ignore harmful facts, which Perry has done. Schwickerath, as a rebuttal expert, intends to point out the fundamental flaws in Perry's analysis, including the factors that he omitted.

Plaintiffs have the burden of proof on damages. Plaintiffs place great emphasis on the fact that Schwickerath did not calculate an alternative damages number. There is no prerequisite for a rebuttal expert to calculate an alternative damages number to provide testimony to rebut any argument that Plaintiffs have satisfied their burden of proof.

Nor was it necessary for Schwickerath to compare Rindlisbacher's performance to every other dealer. No other dealer is the subject of this lawsuit, despite Plaintiffs' extensive efforts during discovery (which the Court rejected). Schwickerath does not need any data relating to the performance of other Steinway dealers or published articles on dealer performance to issue a reliable opinion on the facts that Perry ignored, including Rindlisbacher's actions and inactions as a Steinway dealer.[4]

The reliability threshold requires that the expert's testimony have "a reliable basis in the knowledge and experience of the relevant discipline." *Messick v. Novartis Pharm.*

---

[4] The claim that Schwickerath must have reviewed a peer published study in order to have an opinion on Plaintiffs' damages model is unsupported and wrong. (Doc. 221 at 8-9). "Peer reviewed scientific literature may be unavailable because the issue may be too particular, new, or of insufficiently broad interest, to be in the literature." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). Moreover, as Plaintiffs' many failed discovery disputes on the topic demonstrate, any information related to the performance of other Steinway dealers is irrelevant to their claims.

11

111101351.3

*Corp.*, 747 F.3d 1193, 1197 (9th Cir. 2014).  Here, the relevant discipline is not "Steinway dealer," but rather "damages expert."  Schwickerath's opinions meet the reliability threshold.[5]

## IV. Schwickerath's Critique Of Perry's Report Is Not Unduly Prejudicial

"Otherwise admissible expert testimony may be excluded under Fed. R. Evid. 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or undue delay." *United States v. Hoac*, 990 F.2d 1099, 1103 (9th Cir. 1993).  Schwickerath's opinions do not implicate any of these issues and should be admitted.

Plaintiffs assert that Schwickerath's testimony has no probative value because it allegedly repeats Steinway's factual allegations and because Schwickerath did not determine the dollar impact of Rindlisbacher's performance.  Again, Schwickerath does not draw a conclusion that Rindlisbacher was a subpar Steinway dealer as compared to any other dealer.  Schwickerath draws the conclusion that Perry's damages calculation is flawed because he failed to account for Rindlisbacher's performance at all.  Plaintiffs cite no authority to support their claim that Schwickerath must calculate the impact of Rindlisbacher's performance in order to have an admissible opinion on the validity of

---

[5] Plaintiffs inaccurately set forth the law applicable to the claims at issue. They claim they are entitled to damages for fraud. (Doc. 221 at 9). But the Court dismissed the fraud claim. (Doc. 74). The remaining claims are duty-based nondisclosure claims that do not require proof of intent.  Plaintiffs acknowledge that <u>Restatement</u> Section 551 applies to the remaining claims.  (Doc. 221 at 10, n.2).  Plaintiff cited a case in which the District Court granted summary judgment on plaintiff's fraudulent inducement claims because plaintiff had no evidence of reliance. *Meritage Homes Corp. v. Hancock*, 522 F.Supp.2d 1203, 1218 (D. Ariz. 2007).  Thus, that case actually is helpful to Steinway, as Plaintiffs have no evidence that Rindlisbacher would have done anything differently, and therefore did not rely on the alleged nondisclosure of the prior dealer's sales performance.  Plaintiffs similarly cite *Haisch v. Allstate Ins. Co.*, 197 Ariz. 606 (App. 2000), in which the court granted summary judgment for defendant on plaintiff's claims for fraud and negligent misrepresentation, which the appellate court affirmed.  Interestingly, Plaintiffs also cite *Gonzalez v. Gonzalez*, 181 Ariz. 32 (App. 1994), and attribute a quotation to that case that does not exist in the case.

111101351.3

Plaintiffs' damages model.[6]

Schwickerath's testimony does not relate to the "standard of performance of a reasonable Steinway dealer," as Plaintiffs assert. (Doc. 221 at 12). His testimony involves issues arising in economic damages calculations when relevant factors are excluded. The factors' import to the accuracy of the damages model is "beyond the common knowledge of the average layman." *Winters*, 729 F.2d at 605. Schwickerath's testimony is far more probative than prejudicial and should be admitted.

## V. Conclusion

Plaintiffs incorrectly characterize Schwickerath's testimony as opining on the sufficiency of Rindlisbacher's performance as the Maricopa County Steinway dealer. In fact, Schwickerath's report offers opinions regarding the flaws in and the insufficiency of Plaintiffs' damages model, particularly in its faulty assumptions and ignored factors. Schwickerath's testimony is admissible under *Daubert*. Plaintiffs' motion should be denied.

RESPECTFULLY SUBMITTED this 4th day of May, 2020.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: /s/Bruce E. Samuels
Bruce E. Samuels
Heather Stanton
*Attorneys for Defendant Steinway, Inc.*

---

[6] In *Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1006 (9th Cir. 2001), cited by Plaintiffs, the expert's testimony was excluded under Rule 403 because "it was so tinged with ethnic bias and stereotyping" as to be inadmissible. Schwickerath's testimony presents no such similar issue.

13

111101351.3

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2020 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

K. Layne Morrill     klaynemorrill@gmail.com

By:   /s/Joye Allen

111101351.3