**MORRILL LAW. P.L.C.**
Attorneys at Law
8857 N. 63rd Place
Paradise Valley, Arizona 85253
Telephone (602) 432-6291
Fax (480) 584-3157
K. Layne Morrill #004591
klaynemorrill@gmail.com
Attorney for Plaintiffs

### UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin H. Rindlisbacher *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Steinway, Inc., <br><br> Defendant. | Case No: 2:18-cv-01131-MTL <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN PROFFERED TESTIMONY OF DAVID A. SCHWICKERATH** <br><br> (ORAL ARGUMENT REQUESTED) |

### I. Introduction.

On 5/4/20 Defendant filed its Response [Doc. 226 (the "Response," cited as "R.,")] to Plaintiffs' *Daubert* Motion to Exclude Certain Proffered Testimony of David A. Schwickerath [Doc. 221 (the "Motion" cited as "M."]. The Motion identified the Challenged Testimony and showed it must be excluded on grounds of qualification, reliability, relevance and fit, and Rule 403 considerations.

The Response acknowledges: (a) Mr. Schwickerath lacks the expertise to assess the reasonableness of Plaintiffs' performance as Maricopa County dealer; (b) was not given access to Steinway's evidence of relative performance of Steinway dealers, and (c) cannot testify as to the truth of Steinway's generic and unquantified allegations of lack of reasonable performance. Under those circumstances the Challenged Testimony merely

parrots Steinway's generic and unquantified allegations of Plaintiffs' alleged failure to perform reasonably as a Steinway dealer. The defenses of comparative fault, mitigation of damages, and breach of contract, which the Challenged Testimony might "logically advance," are not "a material aspect of [Steinway's] case" because they are not valid defenses to Plaintiffs' fraud claims. The Challenged Testimony does not identify any principle of accounting or economics governing the discipline of economic damages calculation that Mr. Perry's damages formula violates or ignores. It does not provide any numbers that could be inserted into Mr. Perry's damages formula in place of or in addition to the numbers he sourced to record evidence. So the Challenged Testimony does not "logically advance" any experience-based, fact-fitting evaluation of Mr. Perry's damages calculation. A damages expert's mere parroting of Steinway's generic and unquantified allegations not tethered to any relevance hook has zero probative value and is therefore clearly outweighed by the danger of unfair prejudice, confusion of issues, and misleading the jury, requiring exclusion under Rule 403.

## II. Standards for Admission of Expert Testimony.

Part II of the Motion stated the standards for admission of expert testimony. [M., at 2:11 to 3:21.] Steinway voiced no disagreement. Yet the Response ignores one critical standard – expert testimony must be "relevant to the task at hand – that it logically advances a material aspect of the proposing party's case. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995)." ("*Daubert II*") [M. at 3:2-4]

Defendant cites *U.S. v. Winters*, 729 F.2d 602, 605 (9th Cir. 1984), a Mann Act case, for the proposition that "An expert witness's '[t]estimony is admissible under Rule 702 if [1] the subject matter at issue is beyond the common knowledge of the average layman, [2] the witness has sufficient expertise, and [3] the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion.'" [R., at 4:13-25.] The defense argued the women had failed to take clear opportunities to escape and the prosecution countered with a psychologist's expert testimony the psychic impact of forced prostitution often causes victims not to seize clear escape opportunities. The

relevance of the testimony was obvious and uncontested; so the Court's statement of the **_pertinent_** tests understandably ignored relevance. But, as noted in *Daubert II* even if the three *Winters* tests are met, the expert testimony must still be "relevant to the task at hand – that it logically advances a material aspect of the proposing party's case." Steinway fatally fails to address that requirement.

### III.  Applicable Standards Require Exclusion of Portions of Mr. Schwickerath's Proffered Testimony.

Part III of the Motion summarized Mr. Perry's damages calculation and Mr. Schwickerath's proffered testimony. [M., at 3:22 to 7:1.] It then addressed qualification, reliability, relevance and fit, and Rule 403 considerations. [M., at 7:2 to 12:23.]

#### *A. Mr. Perry's Proffered Testimony.*

Part III.A. of the Motion summarized Mr. Perry's proffered testimony. [M., at 4:1-22.] Steinway expresses no disagreement. In the interim, a more fulsome analysis has been provided, focusing on: (1) the specific damages formula and its foundation in accounting and economic principles used by experts in damages calculations; and (2) the specific facts in the evidentiary record that supplied the numbers used for each factor in the damages formula. [Plaintiffs' Response to Defendant's *Daubert* Motion to Preclude Testimony of David R. Perry (Doc. 225) (the "PDR"), at 2:21 to 5:23.]

#### *B.    Mr. Schwickerath's Proffered Testimony.*

Part III.B. of the Motion observed the alleged "flaws" making up the Challenged Testimony have nothing to do with the efficacy of the damages calculation in terms of the discipline of forensic accounting for economic damages. [M., at 4:23 to 7:1]. Instead, as Mr. Schwickerath himself states, the Challenged Testimony consists entirely of Mr. Rindlisbacher's alleged "actions or inactions as part of his involvement as a Steinway Dealer during the time with his Phoenix location from late 2010 through the termination in 2017." [Schwickerath Report (Doc. 221-2) § VII.C, at 22.]   Mr. Schwickerath:

- Quotes selected general language from the Phoenix Dealer Agreement about dealer responsibilities and Mr. Rindlisbacher's own general statements concerning his responsibilities as a dealer. [*Id*. § VII.C.1, at 22-23.]

3

- Refers to, and purports to summarize, general, subjective, and unquantified comments by Steinway's western district manager on Mr. Rindlisbacher's Phoenix performance contained in periodic performance review letters. [*Id*. § VII.C.2, at 23-24 and Attachment G.]

- Identifies from Steinway's performance review letters three general areas where Steinway on one to three occasions over 6½ years suggested the need for Mr. Rindlisbacher's Phoenix Steinway store to improve on: (a) "promotional balance," (b) "institutional sales," and (c) "finding good, effective salespeople" with no quantification of any alleged failures. [*Id*. §§ VII.C.3, 4, and 8, at 25-27, 28-29.]

- Reiterates from various performance reviews, documents, or deposition testimony, Steinway's generic, non-quantified contentions that Mr. Rindlisbacher allegedly lacked appropriate "market focus"; was insufficiently available on the showroom floor but instead spent time in an office at his warehouse facility; and was allegedly distracted by his Utah and Washington operations. [*Id*. § VII.C.5, 6, and 7, at 27-28.]

Plaintiffs showed the Challenged Testimony simply parrots Steinway's general and unquantified allegations as to Plaintiffs' alleged performance as a Steinway dealer in the Maricopa County market cloaked in the mantel of an expert. [M., at 8:5-11; 11:27 to 12:21.] Steinway admits this is true, because Mr. Schwickerath does not: (1) express any "conclusion" as to any of Steinway's allegations; (2) opine as to the impact, if any, that consideration of Steinway's allegation would have on the damages calculation – either through a reasoned analysis or a calculation of a specific dollar impact on damages; or (3) perform an alternative damages calculation that "corrects for" any quantifiable impact of Steinway's allegations on calculated damages. [R., at 3:6-9, 13-17; 5:8-9.]

### C. Mr. Schwickerath's Expertise Does Not Extend to the Challenged Testimony.

Part III.C. of the Motion showed Mr. Schwickerath lacks appropriate expertise to express any opinions that Plaintiffs' actual performance as a Maricopa County dealer was, in fact, as alleged by Steinway; or that Plaintiffs did not exert reasonable efforts and make reasonable expenditures to sell Steinway pianos in Maricopa County for 6.5 years until Steinway terminated Plaintiffs' agreement. [M., at 7:2 to 8:13.] Steinway admits

Mr. Schwickerath lacks such qualifications; but claims it does not matter because he is **_not expressing any opinions_** on those topics. [R., at 3:6-9, 13-17; 5:8-9.] So Steinway admits this witness, cloaked in the mantel of an expert, is merely parroting Steinway's generic and unquantified allegations about Plaintiffs' performance as its Maricopa County Steinway dealer. The Challenged Testimony is not relevant and should be excluded under Rule 403. See Parts III.D., III.E., and III.F. below.

### D.  Reliability of the Challenged Testimony.

Part III.D showed that the Challenged Testimony had no reliable foundation in available data concerning the performance of Steinway's US dealers and its performance evaluations of those dealers. [M., at 8:14 to 9:11.] Steinway agrees that Mr. Schwickerath's testimony has no such foundation; but claims that does not matter because he is **_offering no opinions that would require a foundation in such data._** [R., at 3:6-9, 13-17; 5:8-9.] So Steinway admits Mr. Schwickerath is merely parroting Steinway's allegations "cloaked in the mantel of an expert." The Challenged Testimony is not relevant and should be excluded under Rule 403. See Parts III.E. and III.F. below.

Steinway suggests [R., 11:15-20 & n. 4] that because "other dealer" evidence Plaintiffs sought in discovery was held to be "irrelevant **_to [Plaintiffs'] claims_**," (emphasis added) it is *ipso facto* irrelevant **_to Steinway's claims_**. Clearly, when Steinway argues Plaintiffs failed to perform reasonably as its Maricopa County dealer, Steinway's **_own evidence_** on comparative dealer performance and evaluations (which it produced with the "other dealer" information redacted) is relevant to its claims. Steinway's failure to offer evidence in its possession in support of **_its own claims_** destroys their credibility.

### E.  Relevance of the Challenged Testimony.

Part III.E. of the Motion showed the Challenged Testimony must be excluded because not relevant to the admissibility of Mr. Perry's damages calculation. [M., at 9:12 to 11:23.] Steinway says the Challenged Testimony is relevant to the damages calculation because it identifies "evidence in the record" Mr. Schwickerath believes Mr. Perry should have considered in his damages calculation, but allegedly did not. [R., at 8:9-14.]

Not all "evidence in the record" is relevant to admissibility of a damages expert's testimony. Expert testimony must "logically advance[] a material aspect of the proposing party's case." *Daubert II,* 43 F.3d at 1315. So, what "material aspect of [Steinway's] case" is "logically advance[d]" by Mr. Schwickerath's parroting of Steinway's generic and unquantified allegations of Plaintiffs' alleged sub-par performance? None.

### 1. *Comparative Fault is Not a Material Aspect of Steinway's Case*.

Steinway asserts one "material aspect of [its] case" the Challenged Testimony logically advances is a comparative fault defense. [R., at 9:9-22.] Comparative fault, grounded in principles of negligence, does not apply to "Plaintiffs' fraud claims." [Plaintiffs' Motion for Summary Judgment on Certain Affirmative Defenses (Doc. 192) ("PMSJ-AD"), at 8:10 to 10:6; Plaintiffs' Reply in Support of Motion for Summary Judgment on Certain Affirmative Defenses (Doc. 222) ("Reply-AD"), at 4:19 to 5:9.] Ignoring all the authorities supporting that conclusion, Steinway cites *Aztlan Lodge No. 1 v. Ruffner*, 745 P.2d 611, 613-14 (1987) as holding the pre-comparative fault defense of contributory negligence applies to a negligent misrepresentation claim. [R. 9:9-12.] But Plaintiffs assert fraud claims and comparative fault is not a defense to fraud claims.

Under the Court's rulings on motion to dismiss, and as judicially admitted by Steinway's nineteen references to Plaintiffs' "fraud claims" in that briefing, Steinway's immaculate amendment argument is frivolous. Nothing short of a Rule 15 amendment (which never occurred) could change Plaintiffs' "fraud claims" to "negligent omission" claims. [Plaintiffs' Reply on Plaintiffs' Motion for Partial Summary Judgment on Constructive Fraud (Doc., 215), at 4:9 to 6:10; Plaintiffs' Response to Defendant's Motion for Summary Judgment on Liability (Doc. 217), at 7:9 to 8:3; Reply-AD (Doc. 222) at 6:11 to 11:19.]

As a matter of law, comparative fault is not "a material aspect of [Steinway's] case" so it cannot be the required relevance hook for the Challenged Testimony.

### 2. *Mitigation of Damages is Not a Material Aspect of Steinway's Case*.

Steinway also asserts one "material aspect of [its] case" logically advanced by the

Challenged Testimony is its purported defense of mitigation of damages. [R., at 8:19 to 9:8.] As a matter of law, Steinway has the burden of proof on mitigation. And Steinway has failed to make the required showings that: (a) a specific identified mitigation step (b) would have been successful and (c) would have reduced Plaintiffs' calculated damages by a specific amount. [PMSJ-AD (Doc. 192) at 12:12 to 16:7; Reply-AD (Doc. 222), at 7:11 to 9:8.] Steinway cites authorities for an overview statement of the doctrine of mitigation but fails to address the Arizona cases defining its burden of proof which is the crux of Plaintiffs' argument. Steinway has failed to make the required showings.

Steinway's hypothetical on mitigation [R., at 7:13-17] only dramatizes its failure on burden of proof. Steinway posits Plaintiffs limited their business hours in Maricopa County to one day per week rather than the six days Steinway stores are generally open. Steinway asserts that because Plaintiffs' positions would preclude that evidence the position is "amazing for its brazenness." [R. 7:14-15.] But under its hypothetical Steinway could carry its burden of proof. Assume Plaintiffs' financial statements showed that by staying open one day per week for 6.5 years its total sales were $X. On the hypothetical facts Steinway would have (a) identified a specific mitigation step (staying open six days per week rather than one) that (b) would have been successful (logical inference that being open six times longer would likely produce six times the sales) and (c) would have permitted calculation that $5X in damages would have been avoided ($6X - $X = $5X). In contrast Steinway's generic and unquantified allegations Plaintiffs failed to act as a reasonable Steinway dealer do not carry that burden.[1]

As a matter of law, mitigation of damages is not "a material aspect of [Steinway's]

---

[1] Steinway cites the general "avoidance of damages" section of *Restatement (Second) of Torts* § 918 but ignores the example of its application. "*A* tortiously destroys *B*'s fence. Although *B* knows the facts and is able to build a temporary barrier at an expense of $20, he fails to do so and his cattle worth $500 stray from the field and are lost. *B* is entitled to recover only $20 in addition to the value of the destroyed fence." *Id.*, Cmt. *b*, Ex. 8. The example (a) identifies a specific mitigation step (building a temporary barrier) and shows (b) it would have been successful (logically, a temporary barrier would have kept the cattle in the field). and (c) *B* would have avoided a specific amount of damages ($500 in damages for the lost cattle) through the successful mitigation step. Steinway's generic and unquantified allegations do not carry its burden on mitigation.

case," so it cannot be the required relevance hook for the Challenged Testimony.

### 3. *Breach of Contract is Not a Material Aspect of Steinway's Case*.

Steinway does not even assert that the "material aspect of [its] case" logically advanced by the Challenged Testimony is its "breach of contract" defense or other contract-based defenses. Plaintiffs have shown, as a matter of law, that breach of a fraudulently induced contract is not a defense to fraud claims. [PMSJ-AD (Doc. 192) at 10:7 to 12:11; Reply-AD (Doc. 222), at 5:10 to 7:10.] So it cannot be the required relevance hook for the Challenged Testimony.

### 4. *The Challenged Testimony Does not "Logically Advance" any Reliability or Fit Criticism of Mr. Perry's Calculations.*

Steinway asserts the Challenged Testimony suggests Mr. Perry's expert damages analysis should not be believed by the jury because it fails to consider Steinway's generic and unquantified allegations of subpar performance as Maricopa County dealer. [R., at 8:9-19.] But the issue is not credibility – it is admissibility.

Steinway relies [R., at 3:19 to 4:12] on an out-of-circuit district court opinion in *KW Plastics v. U.S. Can Co.*, 199 F.R.D 687 (M.D.Ala. 2000). Steinway claims this case shows that merely parroting the retaining party's allegations as to the plaintiff's behavior as a "criticism" of Mr. Perry's damages calculation that is "a well-accepted way to criticize damages estimates." [R., 4:1.] That assertion does not withstand analysis, because the "criticisms" leveled by the rebuttal damages expert in *KW Plastics* went directly to reliability and fit while Mr. Schwickerath's "criticisms" do not.

U.S. Can sued KW Plastics to enforce a five-year noncompete in which KW Plastics agreed not to use U.S. Can's trade secrets to misappropriate any of its customers. KW Plastics apparently obtained Behr paints (apparently a former U.S. Can customer) as customer in violation of that noncompete. The thrust of KW Plastics' proffered rebuttal testimony was that "U.S. Can's damage calculations are ***materially divorced from the realities of its business and the facts of the case***." 199 F.R.D. at 691 (emphasis added). The rebuttal expert for KW Plastics "takes the position that [U.S. Can's expert's]

***methodology is defective*** for several reasons, such as ***faulty assumptions of causation***, ***improper analysis of market pressures***, and ***improper accounting procedures***." 199 F.R.D. at 688, 691 (emphasis added).

By substituting in the following quote the names of our case experts for the experts in *KW Plastics*, we can see how Mr. Schwickerath's "criticisms" of Mr. Perry's damages calculations fall far short of the "criticisms" the court approved in *KW Plastics*:

> In this case, [Perry] intends to proffer a damages calculation report. [Schwickerath] intends to criticize the report because it is ***not tied to any 'real world' events***. In other words, [Schwickerath] is prepared to testify that, while [Perry's] report implicitly assumes (or erroneously fails to consider) facts *X, Y,* and *Z*, [Perry's] analysis is ***seriously flawed*** if the jury does not accept *X, Y,* and Z as true. 199 F.R.D., at 692 (emphasis added).

Mr. Schwickerath's criticisms do not show Mr. Perry's damages calculations are "not tied to ***any*** 'real world' events" making them "***seriously flawed***" or "***materially divorced from the realities of [Plaintiffs'] business or the facts of the case.***" His "criticisms" are not central to the efficacy of the damages formula or its application. They are not "methodological defects" such as "improper analysis of market pressures" or "improper accounting procedures" or even "faulty assumption as to causation."[2] Mr. Perry's damages formula is founded in basic principles of accounting and economics used by damages experts; and every factor in that formula is sourced to record evidence providing the numbers used for that formula factor. The Challenged Testimony identifies no principle of accounting or economics Mr. Perry allegedly violates or ignores; and it provides no numbers Mr. Perry could have used as factors in the damages formula other than or in addition to the "'real world' events" Mr. Perry identified in the evidentiary record and used in his damages formula.

*KW Plastics* states two of its alleged "'real world' events" were: (1) "whether U.S. Can would have sought a ten-year contract with Behr" and (2) whether "Behr would have

---

[2] Here, unlike *KW Plastics*, expert testimony on causation is not required. [PDR (Doc 225), at 8:20-21, 10:14-17, 12:8-14.]

contracted with U.S. Can for any period of time" if KW Plastics had not breached the noncompete. Those events go to the heart of the damages analysis. A jury finding against item (1) would have gutted U.S. Can's damages analysis which assumed profits from can sales to Behr for a period of 10 years. A jury finding in favor of item (2) would also have gutted U.S. Can's damages model which assumed that Behr would have contracted with U.S. Can in the absence of KW Plastics' breach of the non-compete agreement.

The Challenged Testimony does not "logically advance" any contention Mr. Perry's damages calculation is not reliable or fit. Mr. Schwickerath's "criticisms" do not identify any principle of accounting or economics violated by Mr. Perry's calculations. They do not identify any numbers sourced to record evidence that can be used in a damages formula. Steinway's generic and unquantified allegations simply cannot be incorporated into a damages calculation so they are not a legitimate *Daubert* "criticism."

### F. The Challenged Testimony has No Probative Value and a High Danger of Unfair Prejudice, Confusion of Issues, and Misleading the Jury.

Part III.F. of the Motion showed the Challenged Testimony must be excluded under the standards of Rule 403. [M., at 11:24 to 12:23.]

In *Daubert*, the Supreme Court noted that Rule 403 permits the exclusion of expert testimony, quoting Judge Weinstein: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than lay witnesses." 509 U.S. at 595.

Steinway admits Mr. Schwickerath's parroting Steinway's generic and unquantified allegations is inadmissible to prove the truth of the statements and so lacks substantive probative value. [R., at 4:3-12.] Mr. Schwickerath's "criticisms" are untethered to any possible relevance hook. First, Steinway's affirmative defenses are unavailable and therefore fail as the required relevance hook. Second, unlike the "criticisms" in *KW Plastics*, the Challenged Testimony does not show a departure from any accounting or economic principle governing the discipline of damages calculations,

so reliability fails as the required relevance hook. Third, the fit of Mr. Perry's opinions fails as the required relevance hook because the Challenged Testimony provides no numbers Mr. Perry could have used in lieu of or in addition to the numbers he sourced to the evidentiary record. Therefore the Challenged Testimony has no probative value, either substantive or as *Daubert* reliability/fit criticisms of Mr. Perry's calculations.

Mr. Schwickerath's "criticisms," being untethered to any relevance hook, and merely cloaking in the expert mantel Steinway's generic and unquantified allegations that Plaintiffs did not perform reasonably as its Maricopa County dealer, would be "both powerful and quite misleading" to the jury. Because it has no probative value and creates a real danger of unfair prejudice, confusion of issues, and misleading the jury, the Challenged Testimony should be excluded under Rule 403.

### IV. Conclusion.

Rule 702 and *Daubert* require exclusion of the Challenged Testimony. It does not "logically advance" any "material aspect of [Steinway's] case." The affirmative defenses of comparative fault, mitigation of damages, and breach of contract are not available against Plaintiffs' fraud claims. So none of those defenses is a "material aspect of [Steinway's] case" that the Challenged Testimony could "logically advance." Mr. Schwickerath's "criticisms" of Mr. Perry's damages calculations do not show violation of any rule of accounting or economics applicable to damages calculations. His "criticisms" of Mr. Perry's damages calculations do not identify any numbers in the record evidence that Mr. Perry could use, in lieu of, in addition to the numbers for each factor in the formula that he sourced to record evidence. In short, Mr. Schwickerath's "criticisms" do not address the reliability/fit of Mr. Perry's damages calculations. The Challenged Testimony does no more than summarize the generic and unquantified allegations Defendant itself will present at trial in an effort to bolster its credibility because it is being trumpeted by an "expert." It has zero probative value. And as powerful expert evidence that is clearly misleading it would be difficult for the jury to evaluate. Rule 403 balance requires exclusion of the Challenged Testimony.

RESPECTFULLY SUBMITTED, this 11th day of May 2020.

**MORRILL LAW, P.L.C.**

By *s/K. Layne Morrill*
K. Layne Morrill #004591
8857 N. 63rd Place
Paradise Valley, Arizona 85253
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2020 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Bruce E. Samuels | bsamuels@lrrc.com |
| Heather Stanton | hstanton@lrrc.com |

*/s/ K. Layne Morrill*
K. Layne Morrill
Morrill Law PLC