**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin H Rindlisbacher, et al., | No. CV-18-01131-PHX-MTL |
| Plaintiffs, | **ORDER**<br>**(Under Seal)** |
| v. | |
| Steinway & Sons Incorporated, et al., | |
| Defendants. | |

Steinway, Inc. ("Steinway") prevailed on Plaintiffs Kevin and Jami Rindlisbacher (the "Rindlisbachers") and their company Piano Showroom of Arizona, Inc.'s remaining claims at summary judgment. (Doc. 252.) The Clerk of the Court entered judgment and terminated the case. (Doc. 253.) Steinway now moves for attorneys' fees pursuant to A.R.S. § 12-341.01, which authorizes an attorneys' fees award to a successful party in "any contested action arising out of a contract." (Doc. 255.) Steinway's motion will be granted in part.

I.     **BACKGROUND**

On October 30, 2020, this Court issued an order granting summary judgment in favor of Steinway on the Rindlisbachers then-remaining tort claims. (Doc. 252.) The facts underlying the present action are discussed at length in that order. (*See id.*) Assuming familiarity with the factual and procedural history of this case, the Court will recount only those aspects that are pertinent to the pending motion.

The Rindlisbachers are experienced piano retailers. (Doc. 163 ¶ 32.) Steinway

manufactures high-end acoustic pianos. (*Id.* ¶¶ 19, 26.) In 2006, the Rindlisbachers and Steinway executed a dealer agreement (the "Spokane Agreement"), which allowed the Rindlisbachers to sell Steinway pianos in Spokane County, Washington. (*Id.* ¶ 40.) Four years later, Steinway and the Rindlisbachers entered a second dealer agreement (the "Phoenix Agreement"), which authorized the Rindlisbachers to sell Steinway pianos in Maricopa County, Arizona. (*Id.* ¶ 71.) The Phoenix Agreement contains a choice-of-law provision, which provides that the "[a]greement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of law principles." (Doc. 206, Ex. 35.) The Phoenix Agreement also set annual sales goals for the Phoenix market. (*Id.*) The Rindlisbachers' sales consistently fell below those established goals, and Steinway terminated the Phoenix Agreement in 2017. (Doc. 163 ¶¶ 84, 94.)

In April 2018, the Rindlisbachers initiated this action. They alleged that Steinway's failure to disclose the historical sales of Steinway pianos in the Phoenix market and at a company-owned store in Hollywood, California rendered statements made by a Steinway representative and the Phoenix Agreement's sales goals misleading. (*Id.* ¶¶ 1–9, 98–101.) The Rindlisbachers' asserted various tort and contract claims against Steinway. (*Id.*) Steinway moved to dismiss each claim. (Docs. 26, 52.) At the pleadings stage, the Court applied Arizona law to the Rindlisbachers' tort claims, while New York law governed the contract claim. (*See* Docs. 74, 113.) Only the Rindlisbachers' constructive fraud and fraudulent omissions (nondisclosure) claims survived Steinway's motions to dismiss. (*Id.*) The parties then filed cross-motions for summary judgment. (Docs. 192, 199, 205, 207.) The parties agreed that Arizona law governed the Rindlisbachers' remaining claims. The Court granted summary judgment in Steinway's favor and entered judgment accordingly. (Docs. 252–53.) Steinway now requests $1,028,439.50 in attorneys' fees pursuant to A.R.S. § 12-341.01. (Doc. 255 at 2.) At oral argument, Steinway clarified that it is only seeking the fees it incurred defending the Rindlisbachers' tort claims. (Doc. 287 at 5–6.) The Rindlisbachers oppose the motion. (Doc. 268.)

1   **II.   LEGAL STANDARD**

2   "[I]n federal cases where the controlling substantive law is state law, such as in

3   diversity cases . . . , attorneys' fees can be awarded under state law." *Poehler v. Fenwick*,

4   No. 2:15-CV-01161, 2016 WL 1428095, at * 2 (D. Ariz. Apr. 12, 2016). A party requesting

5   an award of attorneys' fees must show that it is (1) eligible for a fee award, (2) entitled to

6   an award, and (3) requesting a reasonable amount of fees. *See* LRCiv 54.2(c). The moving

7   party must attach supporting documentation to any request for attorneys' fees, including

8   (1) a statement of consultation, (2) a complete copy of any written fee agreement, (3) a

9   task-based itemized statement of time expended and expenses incurred, and (4) an affidavit

10  of moving counsel. LRCiv 54.2(d).

11  **III.   DISCUSSION**

12          The issue is whether Steinway may recover attorneys' fees from the Rindlisbachers

13  for successfully defending their constructive fraud and nondisclosure claims. As outlined

14  in detail below, the answer to that question is in the affirmative. The Court's analysis begins

15  with a choice-of-law question.

16          **A.   Choice of Law**

17          The parties disagree whether Arizona or New York law governs the pending motion.

18  Both Arizona and New York follow the American Rule for fee shifting. *Kaufmann v.*

19  *Cruikshank*, 222 Ariz. 488, 490 (App. 2009); *Baker v. Health Mgmt. Sys., Inc.*, 98 N.Y.2d

20  80, 88 (2002). Under the American Rule, "attorneys' fees are not recoverable unless they

21  are expressly provided for either by statute or contract." *Cortaro Water Users' Ass'n v.*

22  *Steiner*, 148 Ariz. 314, 316 (1986). In Arizona, courts are authorized by statute to award a

23  successful party reasonable attorneys' fees in any contested action "arising out of a

24  contract." A.R.S. § 12-341.01(A). Steinway has not cited, and this Court is not aware of, a

25  comparable New York statute. Steinway's ability to recover attorneys' fees therefore

26  depends on whether the Arizona statute or New York law governs the pending motion.

27          When a conflict of law exists "[i]n a diversity case, the district court must apply the

28  choice-of-law rules of the state in which it sits." *Abogados v. AT&T, Inc.*, 223 F.3d 932,

934 (9th Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Because this Court is in Arizona, Arizona's choice-of-law rules apply. To determine whether Arizona or New York law governs the pending motion, the Court must first determine whether the recovery of attorneys' fees is a procedural matter or a substantive matter. *Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 206 (1992). If procedural, the law of the forum will apply, and the choice-of-law inquiry will end. *Id.* If substantive, "the law of the jurisdiction to which the court is referred by [Arizona's] choice-of-law rules" will govern. *Id.* (internal quotations omitted).

In Arizona, the recovery of attorneys' fees is a matter of substantive law. *See Aries v. Palmer Johnson, Inc.*, 153 Ariz. 250, 258 (App. 1987). As a substantive matter, the pending motion will be governed by the law to which the Court is referred by Arizona's choice-of-law rules. *Id.* Arizona has expressly adopted the Restatement (Second) of Conflicts (1971) (the "Restatement") to resolve choice-of-law questions. *Cardon*, 173 Ariz. at 206. The parties agree that the Restatement applies but disagree as to whether § 145—which provides the "principle applicable to all torts and to all issues in tort"—or § 187—which "set[s] forth general rules" applicable to "all contracts and to all issues in contract"—controls. *See* Restatement § 145, cmt. a; § 186, cmt. a.

Steinway argues that the Court should apply § 145 because Steinway's fee request arises directly from the Rindlisbachers' tort claims. (Doc. 279 at 2–3.) Rather than referring to § 145, the Rindlisbachers urge the Court to apply § 187 because the Phoenix Agreement, which governs the parties' contractual relationship, contains a choice-of-law provision. (Doc. 268 at 3.) Steinway does not dispute that provision's validity. (Doc. 255 at 3.) Instead, Steinway takes issue with the provision's scope, i.e., its applicability to the Rindlisbachers' tort claims. (*Id.* at 4.) Thus, the Court must determine whether the choice-of-law provision is broad enough to encompass the issue presently before the Court: whether Steinway may recover the attorneys' fees it incurred defending the Rindlisbachers' tort claims. *See Magellan Real Est. Inv. Tr. v. Losch*, 109 F. Supp. 2d 1144, 1157 (D. Ariz. July 28, 2000) ("Arizona courts [] would effectuate the intent of [the] parties who drafted

a choice of law provision by applying the chosen law to all claims within the scope of the provision.").

The Phoenix Agreement's choice-of-law provision is narrow: it applies only to the contractual relationship between Steinway and the Rindlisbachers. The provision reads: "This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of law principles."[1] (Doc. 206, Ex. 35.) The provision contains no terms expanding its scope to disputes "related to" or "arising from" the Agreement. Instead, the provision requires that New York law only apply to claims about the Agreement, itself, like the Rindlisbachers' breach of contract claim. *See Magellan Real Est. Inv. Tr.*, 109 F. Supp. 2d at 1158 (narrowly construing a choice-of-law clause, which provided an "agreement shall be governed by and construed in accordance with the laws of the province of Ontario," because no terms expanded its scope).

The Rindlisbachers' tort claims are outside the narrow scope of the provision. *See Winsor v. Glasswerks PHX, LLC*, 204 Ariz. 303, 306 (App. 2003) ("[Tort claims] are not ordinarily controlled by a contractual choice of law provision." (quoting *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992))). This conclusion comports with the parties' intent. The parties agreed that Arizona law governed the Rindlisbachers' tort claims at each stage of this case[2] (Docs. 26, 34, 192, 199, 205, 207), and the Court applied Arizona law to those claims at both the pleadings stage and at summary judgment. (Docs. 74, 113, 252.) The Court therefore concludes that the choice-of-law provision does not apply to the Rindlisbachers' tort claims or the issue of whether Steinway may recover attorneys' fees for successfully defending them.[3]

---

[1] The Spokane and Phoenix Agreements contain the same choice-of-law provision.

[2] As recent as oral argument on the pending motion, the Rindlisbachers' counsel was adamant that "the choice-of-law agreement does not apply to tort claims." (Doc. 287 at 40.)

[3] At oral argument, the Rindlisbachers suggested that the Court must apply § 187 because, at the pleading stage, the Court referred to § 187 to determine whether the New York or Arizona statute of limitations governed their breach of contract claim. (Doc. 74 at 40–42.) The Rindlisbachers are correct that, at the pleading stage, the Court engaged in a § 187 analysis. (Doc. 74 at 10–12.) The Court did so because the claim at issue was the Rindlisbachers' breach of *contract* claim—a claim subject to the choice-of-law provision. Here, the relevant claims are *tort* claims, and the choice-of-law provision does not apply.

Because the choice-of-law provision is inapplicable, § 145 controls. *See Winsor*, 204 Ariz. at 307 (applying § 145 to resolve a choice-of-law question because the tort claim at issue was outside the scope of a choice-of-law provision). Under § 145, the law of the state having the most significant relationship to the occurrence and the parties determines the parties' rights and liabilities. *Bates v. Superior Ct.*, 156 Ariz. 46, 49 (1988). To identify such state, courts consider four factors: (1) the place of the injury, (2) the place of the conduct causing the injury, (3) the parties' domicile, and (4) the place where the parties' relationship is centered. Restatement § 145(2). As implied by the Court's consistent application of Arizona law to the tort claims in this case, Arizona is the state with the most significant relationship to the parties and the events giving rise to the tort claims. The alleged injury occurred in Arizona. (Doc. 163 ¶¶ 83–85.) The Rindlisbachers live in Arizona. (*Id.* ¶ 10.) Piano Showroom of Arizona, Inc. is incorporated in Arizona, and its principal place of business is also in Arizona. (*Id.* ¶ 11.) The parties' relationship is centered in Arizona. Because Arizona is the state with the most significant relationship to the Rindlisbachers' tort claims and the issue of whether Steinway may recover its attorneys' fees for successfully defending against them, Arizona law will govern the pending motion.[4]

## B. Eligibility

Having determined the applicable law, the Court must next assess whether Steinway is eligible for attorneys' fees. *See* LRCiv 54.2(c)(1). Steinway requests a fee award pursuant to A.R.S. § 12-341.01(A). (Doc. 255 at 2.) To be eligible for attorneys' fees under that statute, two criteria must be met: (1) the moving party must be "the successful party," and (2) the action must "aris[e] out of a contract." A.R.S. § 12-341.01(A). A party is

---

[4] At oral argument, the Rindlisbachers argued that, even if Arizona law governs the tort claims, "the ability to recover attorneys' fees is a matter of contract between the parties." (Doc. 287 at 39.). Because that argument is not supported by caselaw, the Court will reject it. *See Atkins v. Calypso Sys. Inc.*, No. CV-14-02706, 2017 WL 1019661, at *3–4 (D. Ariz. Mar. 16, 2017) ("[R]egardless of whether the parties' contractual choice-of-law provision insulates [the plaintiff's] contract claims from section 12-341.01, the Court previously ruled that [the plaintiff's] tort claims are governed by Arizona law. . . . To the extent [the] tort claims 'aris[e] out of a contract,' [the defendant] may therefore be entitled to attorneys' fees [under § 12-341.01].").

successful if it "accomplished the result sought in the litigation." *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 189 (App. 1983). Steinway is the successful party in this case: it prevailed on each of the Rindlisbachers' claims. The first criterion is therefore satisfied.

Turning to the second criterion, the parties agree that this case arises out of contract. (Doc. 255 at 8; Doc. 287 at 27.) As the parties note, "[t]he meaning of 'arises out of contract' is broad for purposes of [§ 12-341.01]." *ML Servicing Co. v. Coles*, 235 Ariz. 562, 570 (App. 2014). Under this statute, attorneys' fees may be awarded "in tort cases which find their basis in contract." *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 543 (1982). In determining whether a claim arises out of contract for purposes of § 12-341.01, "the fundamental nature of the action rather than the mere form of the pleadings" is considered. *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 15 (App. 2000). The test "is whether the plaintiff would have a claim even in the absence of a contract." *ML Servicing Co.*, 235 Ariz. at 570 (internal quotations omitted).

The Rindlisbachers' tort claims arise directly from their business relationship with Steinway. Throughout this case, the Rindlisbachers argued that Steinway had a duty to disclose certain facts because of the parties' contractual relationship in Spokane, Washington, and further alleged that Steinway's failure to do so rendered the Phoenix Agreement's annual sales goals misleading. (Doc. 163 at ¶ 97.) For example, the Fourth Amended Complaint, in its first paragraph, alleges:

> In 2010, while Steinway occupied a longstanding relationship of trust and confidence toward Rindlisbachers as its Spokane, Washington dealer, Steinway induced Rindlisbachers to become its Phoenix dealer by fraudulent representations concerning reasonable annual sales performance goals for the Phoenix market.

(*Id.* ¶ 1.) To substantiate the existence of that "relationship of trust and confidence," the Rindlisbachers relied heavily on the terms of the dealer agreements. (*Id.* ¶¶ 32–51.) They emphasized that, under the agreements' terms, they were Steinway's exclusive sales representative for specific territories and that the agreements prohibited sales of competing lines of pianos and sales for resale. (Doc. 199 at 13.) They argued that they entrusted power

over their business to Steinway by abiding by sales restrictions, displaying signage, utilizing certain interior décor and layouts of merchandise, and training employees as required under the dealer agreements' terms. (*Id.* at 14.) And the Rindlisbachers' damages theory was premised, in large part, on the Phoenix Agreement's annual sales goals. (Doc. 163 at 28.) Accordingly, the Court concludes that the only reason the Rindlisbachers had tort claims against Steinway is because of the parties' business relationship. That relationship, of course, would not have existed but for the parties' dealer agreements. Thus, the Court agrees with the parties that the Rindlisbachers' tort claims "aris[e] out of contract" within the meaning of § 12-341.01(A).

The Rindlisbachers argue that, even though this case arises out of contract, Steinway cannot recover fees under § 12-341.01 for two reasons. First, the Rindlisbachers contend that a "prerequisite" for § 12-341.01's application is a contract governed by Arizona law. (Doc. 268 at 5.) The Court disagrees. To start, there is no support for the argument in the text of the statute. *See* A.R.S. § 12-341.01(A). The statute, by its terms, authorizes a fee award "[i]n *any* contested action arising out of a contract." *Id.* (emphasis added). Had the Arizona Legislature intended the statute to apply only to actions arising out of contracts governed by Arizona law, it could have included language to that effect. In addition, the argument is at odds with Arizona caselaw.[5] *See ZB, N.A. v. Hoeller*, 242 Ariz. 315, 320 (App. 2017) (awarding fees under A.R.S. § 12-341.01 on appeal even though the underlying contract was governed by Utah law); *see also Ciena Capital Funding, LLC v. Krieg's, Inc.*, 242 Ariz. 212, 216–17 (App. 2017) (finding a party's citation of A.R.S. § 12-341.01 did not conflict with the party's choice of New York law to govern the at-issue

---

[5] The Rindlisbachers rely on *Aries v. Palmer Johnson Inc.* and *Monroe v. Arizona Acreage, LLC*, but neither case supports their position. In *Aries*, the appellate court held that Arizona law governed the substantive issues in the case and upheld a fee award under § 12-341.01. 153 Ariz. 250, 258 (App. 1987). The appellate court did not reach the question of whether a fee award would be proper if Wisconsin substantive law governed the plaintiff's claims. *Id.* In *Monroe*, the appellate court awarded the successful party attorneys' fees pursuant to a contractual provision. 246 Ariz. 557, 567 (App. 2019). Because an Arizona court will enforce a contractual provision for attorneys' fees by its terms, *F.D.I.C. v. Adams*, 187 Ariz. 585, 595 (App. 1996), the appellate court did not consider whether an award for fees under § 12-341.01 was proper. *Monroe*, 246 Ariz. at 567.

contract). The Court therefore rejects the argument.

The Court turns to the Rindlisbachers' second theory: that § 12-341.01 is inapplicable because the statute "directly conflicts" with the Phoenix Agreement. (Doc. 268 at 8.) Section 12-341.01 cannot be construed to "alter[], prohibit[] or restrict[] present or future contracts . . . that may provide for attorney fees." A.R.S. § 12-341.01(A). The statute is therefore "inapplicable by its terms if it effectively conflicts with an express contractual provision governing recovery of attorney's fees." *Am. Power Prods., Inc. v. CSK Auto, Inc.*, 242 Ariz. 364, 368 (2017) (internal quotations omitted).

The Rindlisbachers argue that the Phoenix Agreement does not allow fee shifting. (Doc. 287 at 24, 31–32.) To substantiate this claim, the Rindlisbachers focus solely on the Phoenix Agreement's choice-of-law provision. (Doc. 268 at 8.) In particular, they argue that the choice-of-law provision incorporates by reference "every provision of substantive New York law," including New York's interpretation of the American Rule.[6] By narrowly focusing on the choice-of-law provision, the Rindlisbachers ignore Article XI, an express term of the Phoenix Agreement, which provides that the "[d]ealer"—Piano Showroom of Arizona—"agrees to reimburse Steinway for any costs, *including reasonable attorneys fees*, incurred in enforcing its rights under this Agreement." (Doc. 206, Ex. 35 (emphasis added).) Steinway, to be clear, does not seek attorneys' fees under Article XI (Doc. 279 at 2 n.2), and the Court's analysis is limited to whether a statutory fee award under § 12-341.01 is proper. But Article XI is nonetheless significant because it contradicts the Rindlisbachers' assertion that fee shifting is expressly precluded under the terms of the Phoenix Agreement. Contrary to the Rindlisbachers' assertions, the parties, pursuant to an express contractual term, agreed that fee shifting is permissible. The Court therefore

---

[6] The Court notes that New York classifies the issue of attorneys' fees as a "purely procedural" matter of law. *Costalas v. Amalfitano*, 808 N.Y.S.2d 24, 24 (App. Div. 2005) (noting attorneys' fees are "purely procedural matters"); *see also Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 31 N.Y.3d 569, 584 (2018) ("Attorneys' fees are treated as incidents of litigation, rather than damages."); *Bensen v. Am. Ultramar Ltd.*, No. 92 CIV. 4420, 1997 WL 317343, at *13 (S.D.N.Y. June 12, 1997) (A New York court would consider the application of the American rule to be a fundamental component of the state's procedural law . . . .").

concludes that the application of § 12-341.01 does not conflict with Phoenix Agreement's express terms. *See Am. Power Prods., Inc.*, 242 Ariz. at 368.

The Court next considers the Rindlisbachers' argument that § 12-341.01's application would conflict with the parties' choice of New York law to govern their contractual rights. (Doc. 268 at 8.) An Arizona court, the Rindlisbachers allege, "lacks the power . . . to cause its fee-shifting statute to be 'incorporated by reference' into contracts governed by the substantive laws of New York." (*Id.*) In some respects, this argument stems from the contention that § 12-341.01 is only applicable if the underlying contract is governed by Arizona law, which this Court has already considered and rejected. The Rindlisbachers' argument is flawed for an additional reason: it overlooks the fact that § 12-341.01 is applicable in this case because Steinway's request for attorneys' fees arises directly from the Rindlisbachers' tort claims, which fall beyond the scope of the choice-of-law provision and are therefore governed by Arizona law. If the requested fee award instead arose from the Rindlisbachers' breach of contract claim, to which the choice-of-law provision applies, the Court's conclusion might be different. But that is not the issue presently before the Court. Steinway's request arises solely from the Rindlisbachers' tort claims. These independent causes of action are governed by Arizona law, which includes § 12-341.01. Therefore, the Court need not incorporate § 12-341.01 into the Phoenix Agreement for the statute to apply in this case. Instead, the statute is applicable to the tort claims and the issue of whether Steinway may recover attorneys' fees for defending them because the claims are governed by Arizona law. The Rindlisbachers' argument disregards this key distinction. Accordingly, the argument does not persuade the Court. Steinway is eligible to recover the attorneys' fees it incurred defending the Rindlisbachers' tort claims under § 12-341.01(A).

## C.    Entitlement

A finding of eligibility under § 12-341.01(A), without more, does not establish entitlement to fees. *Harris v. Maricopa Cnty. Superior Ct.*, 631 F.3d 963, 974 (9th Cir. 2011); *see also* LRCiv 54.2(c)(2). Instead, the Court must also "consider the multifactor

standard outlined in *Associated Indemnity Corporation v. Warner*, 143 Ariz. 567, 694 P.2d 1131 (Ariz. 1985)." *Id.*; *see Motzer v. Escalante*, 228 Ariz. 295, 296 (App. 2011) ("[T]here is no presumption that a successful party should be awarded attorney fees under § 12-341.01."). The so-called *Warner* factors are (1) the merits of the unsuccessful party's claims; (2) whether "[t]he litigation could have been avoided or settled;" (3) whether a fee award "would cause an extreme hardship;" (4) whether the successful party prevailed in full; (5) "the novelty of the legal question;" and (6) whether an award would overly deter others from asserting tenable claims or defenses. *Associated Indem. Corp.*, 143 Ariz. at 570. The Court will consider each factor in turn. When doing so, the Court bears in mind the purposes of § 12-341.01, which include:

> (1) mitigating 'the burden of the expense of litigation to establish a just claim or a just defense'; (2) encouraging 'more careful analysis prior to filing suit' by imposing the risk of paying the opposing party's attorneys' fees where legitimate settlement offers are rejected; and (3) promoting settlement and thus reducing caseloads involving contractual matters.

*Am. Powers Prods., Inc.*, 242 Ariz. at 369.

### 1.      The Merits of the Rindlisbachers' Claims

The first factor, the merits of the Rindlisbachers' tort claims, weighs in Steinway's favor. The Rindlisbachers did not succeed on a single claim alleged in their Fourth Amended Complaint. The Rindlisbachers argue their claims had merit because the Court rejected their claims on statute of limitations grounds. (Doc. 268 at 12.) The Rindlisbachers are correct that courts have held that "the fact that the statute of limitations barred [a] claim means the Court did not reach the merits." *BRPS LLC v. Tenney Realty Servs. LLC*, No. CV-18-08249, 2020 WL 1065869 (D. Ariz. Mar. 5, 2020), *vacated by* 839 F. App'x 146, 148 (9th Cir. 2021). But that is not the case here. In addition to finding that the Rindlisbachers' claims were time-barred, the Court concluded that Steinway was "entitled to summary judgment on both of the Rindlisbachers' [remaining tort] claims on the issue of damages," and "on the merits of their constructive fraud claim because the Rindlisbachers [did] not establish[] a genuine dispute of material fact on the issue of a

confidential relation." (Doc. 252 at 39.) This factor therefore weighs in Steinway's favor.

## 2.    Whether the Litigation Could Have Been Avoided or Settled

The second factor—whether the litigation could have been avoided or settled—also favors Steinway. In April 2018, the Rindlisbachers were willing to settle the case for $500,000, but Steinway purportedly refused to engage in settlement talks. (Doc. 269–2 at 2; Doc. 269–10 at 2.) Steinway offered a walk away settlement in December 2018, in which Steinway agreed to waive its right to recover attorneys' fees in exchange for the Rindlisbachers' dismissal of all claims against Steinway with prejudice. (Doc. 255, Ex. B.) That offer cautioned the Rindlisbachers that Steinway believed their claims were barred by the statute of limitations and informed the Rindlisbachers that, if Steinway prevailed, it would seek to recover the fees it incurred. (*Id.*) One year later, Steinway made a $100,000 settlement offer. (*Id.*, Ex. C.) Within that offer, Steinway noted "there is no causation between the alleged omissions by Steinway and [the Rindlisbachers'] purported damages," provided evidence suggesting that the action accrued before 2015, and, again, cautioned that, if successful, Steinway would seek to recover attorneys' fees. (*Id.*) The Rindlisbachers countered, offering to settle the case for just over $3.2 million. (*Id.*, Ex. D.) In September 2020, the parties participated in a settlement conference before a magistrate judge. Steinway offered to settle the case for $250,000. (*Id.*, Ex. F.) The Rindlisbachers increased their settlement offer to $4.4 million. (*Id.*, Ex. E.)

The Rindlisbachers do not dispute that these settlement offers were made. Instead, they assert that Steinway's settlement offers "did not reflect a reasonable settlement value based on risk and exposure." (Doc. 268 at 12.) The Rindlisbachers further allege that "Steinway's refusal to engage at inception when a discounted settlement was likely cuts heavily against a fee award." (*Id.*) "[T]he express and recognized purposes of § 12-341.01 . . . are to mitigate the burden of the expense of litigation . . . and to encourage an early and *ongoing* assessment of the merits" of a case. *Fields v. Elected Offs. Ret. Plan*, 248 Ariz. 241, 244 (App. 2020) (emphasis added). As early as December 2018, Steinway informed the Rindlisbachers that their claims were likely time barred. Steinway reiterated that

position, provided evidence in support thereof, and insisted that the Rindlisbachers'
damages theory was also flawed in December 2019. The risk of paying an opposing party's
attorneys' fees is meant to encourage careful analysis of the viability of claims throughout
the stages of litigation. *Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, 29 (App. 2006). The
Rindlisbachers' decision to pursue their claims with knowledge of their shortcomings
therefore supports an award of attorneys' fees.

### 3.   Whether a Fee Award Would Cause Extreme Hardship

Third, the Court considers whether an award of attorneys' fees would cause extreme
hardship. "[T]he party asserting financial hardship has the burden of coming forward with
*prima facie* evidence of financial hardship," by "present[ing] specific facts by affidavit or
testimony." *Woerth v. City of Flagstaff*, 167 Ariz. 412, 420 (App. 1990) (citing *Sw. Cotton
Co. v. Ryan*, 22 Ariz. 520, 533 (1921)). The Rindlisbachers present the sworn declaration
of Mr. Rindlisbacher and excerpts from federal income tax returns to raise the issue of
hardship. Mr. Rindlisbacher first contends that he and his wife "have invested exclusively
in their business" and therefore "lack other assets." (Doc. 268 at 14.) Their business assets
include "stock in Riverton Music Inc. and its subsidiaries . . . and [] member interests in
two limited liability companies." (Doc. 269–10 at 3.) Riverton Music "operates two retail
stores in Phoenix and two in Salt Lake City." (*Id.*) The limited liability companies "own
two store buildings and a condominium that are leased and operated by [Riverton Music],"
and "one store building that is leased to and operated by a third party." (*Id.*) The
Rindlisbachers allege that the coronavirus pandemic has had a "substantial adverse effect"
on their business. (*Id.* at 4.) Mr. Rindlisbacher also declares that a "fee-award judgment
. . . would be an event of default under . . . the loans making up the $5.1 million" bank debt
owed by their business. (*Id.* at 5.) Mr. Rindlisbacher, who is "approaching retirement age,"
further asserts that he received salaries of $47,765 in 2017 and $48,000 in both 2018 and
2019, in addition to "net cash flow" from rental properties. (*Id.* at 4.)

Steinway takes issue with Mr. Rindlisbacher's declaration, arguing he is a
"sophisticated and profitable businessman who spends $90,000 a year on cars, and lives in

a $1.2 million house with over $250,000 in equity." (Doc. 279 at 9.) Steinway notes that the Rindlisbachers provided their business a $700,000 shareholder loan in 2019, which the business repaid in full. (*Id.*) Steinway also points out that the Rindlisbachers "had the resources to purchase a condominium in 2019 for $195,000 and spent an additional $325,000 remodeling their two adjoining condominiums." (*Id.* at 9–10.) As to business debt and likelihood of default if the Court awards fees, Steinway points out that the Rindlisbachers did "not attach or quote the language in the loan documents [] at issue," but instead, relied solely on Mr. Rindlisbacher's "self-serving declaration." (*Id.* at 10.)

Independent, but related to their alleged financial hardship, the Rindlisbachers argue the relative economic positions of the parties weigh against awarding attorneys' fees. (Doc. 268 at 13.) Steinway asserts that the Court should reject this argument because Mr. Rindlisbacher is "a sophisticated piano retailer who owns several retail locations as well as real estate in three states." (Doc. 279 at 2.)

The Court has considered the parties' arguments and the applicable law. Although the Rindlisbachers have presented some indication of hardship, they have not provided enough evidence for the Court to assess the type of hardship that a fee award would cause. The Rindlisbachers do not address their business's market value, and they fail to provide the Court with complete tax returns, complete financial statements, and relevant loan documents.[7] Without complete information, the Court is skeptical that the Rindlisbachers' financial situation is as dire as they suggest. *See Kaufman v. Warner Bros. Ent. Inc.*, No. CV-16-02248, 2019 WL 2084460, at *8–9 (D. Ariz. May 13, 2019) (concluding that "ambiguous and carefully parsed statements" were insufficient for the Court to determine the level of hardship an award of attorneys' fees would cause). Accordingly, the Court

---

[7] At oral argument, the Rindlisbachers' counsel claimed that "a standard provision in any and every lender agreement that is worth its salt says that, if there is a judgment against the borrower that remains unsatisfied for a period of 30 or 40 days, that will be an event of default under all these agreements." (Doc. 287 at 44.) Thus, counsel alleged, the Rindlisbachers need not provide the Court with the loan documents because "[e]verybody knows that those agreement contain those provisions." *Id.* This general allegation is insufficient to establish extreme hardship. *See Kaufman v. Warner Bros. Ent. Inc.*, No. CV-16-02248, 2019 WL 2084460, at *8–9 (D. Ariz. May 13, 2019).

1    finds that the Rindlisbachers have not carried their burden of production. *See Woerth*, 167

2    Ariz. at 420. This factor therefore favors Steinway.

3            **4.     Whether the Successful Party Prevailed in Full**

4            Fourth, whether the successful party prevailed in full, weighs in favor of an award

5    of attorneys' fees. Steinway successfully defended each of the Rindlisbachers' claims, and

6    the Court entered judgment in Steinway's favor. (Docs. 74, 113, 252–53.) The fourth factor

7    therefore supports awarding attorneys' fees.

8            **5.     Whether the Legal Issues Were Novel**

9            Fifth, the Court considers the novelty of the legal questions presented. The parties

10   agree that this case did not present novel legal issues. (Doc. 255 at 14; Doc. 268 at 12.)

11   Confusingly, the parties suggest that such a finding cuts against awarding fees. (Doc. 268

12   at 12; Doc. 279 at 8.) "[A] finding that the issues are not novel *weighs in favor* of finding

13   an award." *Sandoval v. Oxford Fin. LLC,* No. 1 CA-CV-20-0023, 2021 WL 865245, at *5

14   (Ariz. Ct. App. Mar. 9, 2021) (emphasis added); *see also Syntelco Ltd. v. Reisch*, No. CV-

15   17-00598, 2019 WL 8325351, at *4 (D. Ariz. Oct. 3, 2019) ("A claim that is novel or has

16   not previously been adjudicated weighs against awarding attorneys' fees."); *Goldberg v.

17   Pac. Indem. Co.*, No. CV-05-2670, 2009 WL 1327528, at *4 (D. Ariz. May 13, 2009)

18   (finding the novelty factor weighed in favor of awarding fees because the case did not

19   present a novel legal question). When an issue is not novel, parties can more thoroughly

20   and accurately evaluate the merits of their claims and associated risks. Accordingly, this

21   factor favors Steinway.

22           **6.     Chilling Effect**

23           The sixth factor will weigh against an award of attorneys' fees if an award would

24   discourage other parties from asserting tenable claims or defenses out of fear of incurring

25   liability for substantial amounts of attorneys' fees. *Associated Indem. Corp.*, 143 Ariz.

26   at 570. The Rindlisbachers argue that "[f]ear of liability for substantial amounts of

27   attorney's fees would certainly discourage other Steinway dealers with tenable claims from

28   litigating their issues against Steinway." (Doc. 268 at 16.) Steinway disagrees, asserting

- 15 -

that an award of fees in this case would only "discourage *untenable* claims, like those [asserted] here." (Doc. 279 at 10.)

The Court is mindful that Steinway's fee request is substantial. The sheer size of their request may discourage some third parties from litigating tenable claims due to fear of having to pay similar fee awards. That said, if an award of fees "encourages potential third-party plaintiffs to more thoroughly consider and investigate their third-party claims before filing them, then it benefits future parties and our judicial system." *Fulton Homes Corp. v. BBP Concrete*, 214 Ariz. 566, 573 (App. 2007). The Rindlisbachers had at least three opportunities to consider Steinway's settlement offers and reevaluate the viability of their claims. The Rindlisbachers instead chose to aggressively persist in litigation, even after discovery revealed that their claims were time-barred. Accordingly, this factor marginally favors Steinway.

### 7. Conclusion

Considering the purposes of § 12-341.01 and the *Warner* factors, the Court concludes that Steinway is entitled to an award of attorneys' fees for successfully defending against the Rindlisbachers' tort claims.

### D. Reasonableness

After concluding that awarding attorneys' fees is appropriate under the *Warner* factors, the Court must determine whether the requested fee award is reasonable. *See Schweiger*, 138 Ariz. at 186–89. Steinway requests $1,028,439.50 in fees. (Doc. 255 at 2.) The Rindlisbachers argue that value should be reduced by $594,772. (Doc. 268 at 17.)

When evaluating whether a fee award is reasonable, the Court considers (1) whether the hourly billing rate is reasonable, and (2) whether the hours expended on the case are reasonable. *Schweiger*, 138 Ariz. at 187–89. The reasonableness of a requested fee award is generally analyzed under the "lodestar approach." *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989). "The lodestar method of calculating reasonable attorneys' fees is a two-step process whereby a court multiplies 'the number of hours reasonably expended by a reasonable hourly rate' and then determines if any . . . factors favor[] enhancing or reducing

the arrived at product." *Manone v. Farm Bureau Prop. & Cas. Co.*, No. CV-15-08003, 2016 WL 1059539, at *3 (D. Ariz. Mar. 17, 2016) (quoting *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000)); *see also* LRCiv 54.2(c)(3). "Once a party establishes its entitlement to fees and meets the minimum requirements in its application and affidavit for fees, the burden shifts to the party opposing the fee award to demonstrate the impropriety or unreasonableness of the requested fees." *Nolan v. Starlight Pines Homeowners Ass'n*, 216 Ariz. 482, 491 (App. 2007).

### 1.    Reasonable Billing Rate

The Court begins its analysis with the hourly billing rate. "[T]he rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case." *Schweiger*, 138 Ariz. at 187–88. The Court has reviewed the declaration of Bruce Samuels in support of the pending motion. (Doc. 255–1, Ex. A.) As articulated in Mr. Samuels' declaration, Steinway received the following discounted rates. (*Id.*) The hourly billing rate for partner time was $450 per hour, approximately 20% less than the rate Mr. Samuels ordinarily charges. (*Id.* ¶ 12.) For associate attorneys, the hourly billing rate was $275 per hour. (*Id.* ¶¶ 12, 15.) The hourly billing rate for paralegals was $195 per hour. (*Id.* ¶¶ 12, 16.) The Rindlisbachers make no objection to the billable rates. And the Court concludes the rates are reasonable. *See, e.g.*, *Angel Jet Servs., LLC v. Giant Eagle, Inc.*, No. CV-09-01489, 2013 WL 11311729, at *7 (D. Ariz. Apr. 17, 2013) (finding hourly rates ranging from $255 to $520 per hour were reasonable for the Phoenix market).

### 2.    Hours Reasonably Expended

The Court must next consider the reasonableness of the hours expended defending the case. *See Schweiger*, 138 Ariz. at 188. The successful party is "entitled to recover a reasonable attorney's fee for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Id.* "The affidavit of counsel should indicate the type of legal services provided, the date the service was provided, the attorney providing the service . . . , and the time spent in providing the service." *Id.* The Court may reduce a fee award for hours not reasonably

1   expended. *See id.* ("Just as the agreed upon billing rate between the parties may be
2   considered unreasonable, likewise, the amount of hours claimed may also be
3   unreasonable."); *see also Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("Counsel for
4   the prevailing party should make a good faith effort to exclude from a fee request hours
5   that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice
6   ethically is obligated to exclude such hours from his fee submission.").

7       In support of the pending motion, Steinway submitted billing entries disclosing "the
8   type of legal services provided, the date the service was provided, the attorney providing
9   the service . . . , and the time spent in providing the service." *See Schweiger*, 138 Ariz. at
10  188. (Doc. 255–1 at 38–147, Ex. A–6.) Mr. Samuels, the partner who "had primary
11  responsibility for handling Steinway's defense of this matter," billed 1,220 hours and
12  declares that each billing entry was "made at or near the time of the underlying event in
13  the regular course of business of the law firm." (Doc. 255–1, Ex. A ¶¶ 14, 19.) Mr. Samuels
14  asserts that he eliminated "fees for [] fifteen timekeepers who had less than $2,600 in total
15  fees for their efforts," "reduced the requested fee amount by $3,600 for eight hours of travel
16  time charged to and paid by Steinway," and "wrote off $80,678.50 in fees and $16,822.50
17  in costs before billing, either to eliminate duplication of effort, or as a professional
18  courtesy." (*Id.* ¶ 22.)

19      In addition to Mr. Samuels, two associates were staffed on this matter. Cindy
20  Schmidt—who worked on this case from May 2018 to July 2019—billed 533 hours, and
21  Heather Stanton—who has worked on this case since July 2019—billed 921 hours.
22  (Doc. 255 at 13.) Because the rate charged for each associate's time is the same and there
23  is minimal temporal overlap in their efforts, the Court will not differentiate between the
24  time billed by associate attorneys. Instead, the Court will refer to their time as "associate
25  hours." Two paralegals were also staffed on this case. Tim Pompa worked on this case
26  from May 2018 to October 2018. (Doc. 255 at 13.) Pamela Ramsey has worked on this
27  matter since October 2018. (*Id.*) They billed 400 total hours at a rate of $195 per hour.
28  (Doc. 255–1 at 148.) The Court will refer to their time as "paralegal hours."

- 18 -

The Rindlisbachers make three objections to the reasonableness of the hours claimed by Steinway, which the Court will address in turn. (Doc. 268 at 17.)

### a. Ratio of Associate to Partner Time

The Rindlisbachers first contend that the ratio of associate to partner hours in Steinway's billing records is unreasonably high. (Doc. 268 at 17.) Specifically, the Rindlisbachers assert that the ratio of associate to partner time in this case is "1.19 to 1," while the "norm" ratio of associate to partner time is 2 to 1. (*Id.*) Thus, the Rindlisbachers say, a $57,505 reduction is warranted. (*Id.*)

To bolster their position, the Rindlisbachers rely on *City of Phoenix v. Glenayre Electronics, Inc.*, 240 Ariz. 80 (App. 2016). (Doc. 268 at 16.) They suggest that, in *Glenayre Electronics*, a "fee award of $110,000 [was] reduced from $140,000 because of . . . 'excessive partner fees' compared with 'associates fees.'" (*Id.*) But the Rindlisbachers' summary of the case is not fully accurate. Although it is true that the trial court awarded $110,000 in attorneys' fees to the successful party, the appellate court rejected an argument on appeal that the fee award was unreasonable due to "excessive partner fees (with associates performing a small fraction of the work)" and ultimately affirmed the fee award. *Glenayre Electronics, Inc.*, 240 Ariz. at 89, *vacated in part on other grounds* 242 Ariz. 139 (2017). *Glenayre Electronics* therefore does not offer the Rindlisbachers support. The Court instead agrees with Steinway that "[t]here cannot be a normal ratio of partner to associate time—it is necessarily driven by the needs of each case." (Doc. 279 at 12.) *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008) ("[T]he district court may not set the fee based on speculation as to how other firms would have staffed the case."). Thus, the Court will not reduce Steinway's fee award on this basis.

### b. Objections to Individual Time Entries

The Rindlisbachers also object to multiple individual time entries. (Doc. 268 at 17; Doc. 269–1 ¶ 21; Doc. 269–6 at 1–37.) Those objections fall into four categories. First, the Rindlisbachers contend that paralegals, not attorneys, should have prepared Steinway's deposition summaries. (Doc. 269–6 at 19, 23–25, 32, 35.) Mr. Samuels, at oral argument,

explained that he defended the at-issue depositions. (Doc. 287 at 22.) He described the transcript production as "a disaster" and explained that, because he needed to review the transcripts for accuracy, the additional time spent summarizing the depositions was minimal. (*Id.*) In determining whether to reduce a fee award, "[t]he difficulty and skill level of the work performed, and the result achieved—not whether it would have been cheaper to delegate the work to other attorneys [or paralegals]—must drive the [Court's] decision." *Moreno*, 534 F.3d at 1115. Considering the objected-to tasks, the Court cannot conclude that the deposition summaries should have been assigned to a paralegal. But the Court will reduce the fee award because deposition summaries generally do not require the skill level of a partner. The Court is mindful of the challenges described by Mr. Samuels, and thus the Court will reduce his time by 40%, rather than reducing the time expended to zero.

The second category of objections is excessive hours. The Rindlisbachers' object to three individual time entries on this ground. They first contend that "5.6 hours is excessive to summarize a one day deposition." (Doc. 269–6 at 23.) Because Mr. Samuels completed the deposition summary, the Court already deducted the associated fees by 40% and finds that no additional reduction is necessary. The Rindlisbachers' next objection is that 2.2 associate hours is "way too much time for a letter on untimely errata sheets." (Doc. 269–6 at 24.) Steinway counters that the entry included time to research the consequences of untimely errata sheets. The Court finds this time entry to be reasonable and will not reduce the fee award on this basis. Last, the Rindlisbachers argue that "7 hours to prepare for [oral argument] on [a] motion for judicial notice is excessive." (Doc. 269–6 at 32.) Steinway explains that the oral argument also addressed a motion for sanctions filed by the Rindlisbachers and includes the oral argument, itself. Steinway further asserts that counsel appropriately prepared given the scope and consequences of the motions being addressed. The Court agrees with the Rindlisbachers that Steinway spent an excessive amount of time preparing for oral argument, but the Court disagrees that the hours expended should be reduced to zero. (*See id.*) The Court will reduce the time to 4 hours, which reflects a reasonable expenditure of time under the circumstances.

The Rindlisbachers' third category of objections relates to fees incurred researching and drafting a motion for leave to amend in October 2019. (Doc. 269–6 at 25.) The Rindlisbachers argue that the parties stipulated to an amendment such that fees should not be awarded. (*Id.*) The Court agrees and will deduct the time entries accordingly. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (explaining "hours may be reduced by the court . . . if the hours expended are deemed . . . unnecessary").

The last category of objections takes issue with four individual time entries in which Mr. Samuels spent time preparing for oral argument on the parties' *Daubert* motions and Steinway's motion for sanctions. (Doc. 269–6 at 25.) The Rindlisbachers argue that Mr. Samuels should not have expended any time on either task because the parties did not request, and Court did not set, oral argument on the described motions. (*Id.*) The Court agrees and will reduce the time entries accordingly. *See Chalmers*, 796 F.2d at 1210.

### c. "Unbundled" Time Entries

The Rindlisbachers next allege that broadly labelled categories of fees should be reduced. (Doc. 268 at 17; Doc. 269–7 at 2.) For example, the Rindlisbachers argue that the fees Steinway incurred preparing its "Answer" should be reduced by almost 50%. (*Id.*) As the party opposing the pending motion, the Rindlisbachers must "demonstrate the impropriety or unreasonableness of the requested fees." *Nolan*, 216 Ariz. at 491. They do "not meet that burden merely by asserting broad challenges to the application." *Id.* Because the Rindlisbachers do not specify why such reductions are justified, the Court finds that their objections are insufficient as a matter of law. *See id.* ("It is not enough simply to state, for example, that the hours claimed are excessive . . . .").

### d. Compensable Hours

Having addressed the objections raised by the Rindlisbachers, the Court now determines a reasonable number of compensable hours. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1201–03 (9th Cir. 2013). To do so, the Court must review the billing records submitted by Steinway and "exclude those hours for which it would be unreasonable to compensate." *Id.* The billing records in this case are voluminous, and the Court has

1    thoroughly reviewed each time entry. As outlined in detail below, the Court finds that a

2    further reduction in hours is warranted.[8]

3                                    **i.    Contract Fees**

4            Steinway is only requesting the attorneys' fees that it incurred defending the

5    Rindlisbachers' tort claims. A review of the billing records reveal that multiple time entries

6    correspond solely to Steinway's defense of the Rindlisbachers' breach of contract claim.

7    Conveniently, those time entries are relatively easy to identify. The Rindlisbachers only

8    asserted tort claims when they initiated this case. (Doc. 1.) They later added the breach of

9    contract claim, which is virtually the only difference between the Rindlisbachers' Second

10   Amended Complaint and Third Amended Complaint. (Doc. 47–1; Doc. 48.) Steinway's

11   Answer to the Third Amended Complaint is the same as its Answer to the Second Amended

12   Complaint, except that Steinway also answered the contract claim. (Doc. 51.) And

13   Steinway filed a motion to dismiss and corresponding reply that only addressed the

14   Rindlisbachers' contract claim (Docs. 52, 60), which the Court ultimately granted

15   (Doc. 74). The Court has identified the time entries related to the above-described filings

16   and reduced the fee award accordingly.

17                                   **ii.    Clerical Tasks**

18           Tasks that are clerical in nature are not recoverable as part of a reasonable fee award.

19   *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or

20   secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.");

21   *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (concluding that clerical tasks like

22   filing and document organization "should have been subsumed in firm overhead");

23   *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010) ("Tasks such as

24   reviewing Court-generated notices, notifying clients of court hearings, filing documents

25   with the Court, communication with court staff, scheduling, and corresponding regarding

26   deadlines, are clerical and not compensable."). After a thorough review of the billing

27
28   [8] See the spreadsheets attached as appendices to this Order, which illustrate the total
     amount of hours counsel and staff for Steinway expended on this litigation and the line-by-
     line deductions made by the Court for hours not reasonably expended.

entries, the Court finds that Steinway did not deduct each clerical entry, including entries for scheduling, downloading files, docketing, and communications with Court staff, from its request for attorneys' fees. The Court has noted each clerical entry that was not deducted by Steinway and will reduce the hours expended accordingly.

### iii.    Block Billing

The practice of block billing violates Rule 54.2(e) of the Local Rules of Civil Procedure. That rule provides that billing records must provide an "itemized account" of "[t]he time devoted to each individual unrelated task performed." LRCiv 54.2(e)(1)(B). The Court has noted the entries that are problematic due to block billing and will reduce those time entries by 20% unless the entry is flawed for an additional reason, in which case a further reduction will be indicated. *See Lexington Ins. Co. v. Scott Homes Multifamily Inc.*, No. CV-12-02119, 2016 WL 5118316, at *18 (D. Ariz. Sept. 21, 2016) (reducing an award of attorneys' fees for hours billed on certain dates by 20% because the billing entry did not fully comport with the requirements of Local Rule 54.2(e)).

### iv.    Duplicated Tasks

The Court also has discretion to reduce a fee award for duplicative billing. *See Chalmers*, 796 F.2d at 1210. The Court concludes that Steinway did not deduct each duplicative entry from its request for attorneys' fees. For example, on August 7, 2019, Ms. Ramsey billed 0.3 hours to "[r]eview and analyze 08/07/2019 Order ruling on Discovery Disputes #2-5; email to team regarding same," and, one day later, Mr. Samuels billed 0.3 hours to review the same order. (Doc. 255–1 at 97.) The Court has noted each duplicative entry and will reduce the hours expended accordingly.

### v.    Unnecessary Tasks

The Court may also reduce compensable hours if the hours expended are deemed unnecessary. *Chalmers*, 796 F.2d at 1210. The Court has noted time entries devoted to tasks that did not advance Steinway's interest. For example, the Court reduced a time entry in which a paralegal worked on a motion for reconsideration that was never filed. In addition, the Court notes that, throughout this case, antagonism between the parties and

their counsel fueled superfluous actions. On at least seven separate occasions, the parties requested that the Court impose sanctions against their adversary. (Docs. 126, 151, 178, 187, 202, 231, 264.) Not one of those requests were granted, and the parties could have largely avoided those efforts through professional courtesy and civility. The Court will not reward such behavior. The unnecessary entries have been noted and reduced accordingly. The Court, however, is mindful of a party's obligation to respond to an opposing party's request for sanctions, and thus the Court did not deduct the hours that Steinway expended opposing the Rindlisbachers' sanctions requests.

### vi.   Excessive Hours

The Court also reviewed the billing records to determine whether any of the hours expended were excessive. *See Chalmers*, 796 F.2d at 1210. The Court aggregated the time Steinway spent on different tasks in this case and will make the following reductions.

Steinway spent roughly 23.4 hours preparing an answer to the Rindlisbacher's First Amended Complaint.[9] Before filing that answer, the Rindlisbachers filed a Second Amended Complaint (Doc. 23), pursuant to a stipulation entered by the parties (Doc. 22). Although the Second Amended Complaint only added ten paragraphs to the First Amended Complaint, Steinway spent 10.3 more hours preparing an answer. In the Court's experience, 33.7 hours to prepare an answer to a two-count complaint is excessive and therefore unreasonable. The Court finds that this task should have reasonably required no more than 18 hours to complete. Accordingly, the Court will reduce Mr. Samuels' time by 4.8 hours, associate time by 9.1 hours, and paralegal time by 1.8 hours.

Steinway expended approximately 23.8 hours preparing an answer to the Fourth Amended Complaint. The Court, in its experience, concludes that this answer should have required, at most, 15 hours to complete. Accordingly, the Court will reduce Mr. Samuels' time by 3.8 hours and associate time by 5 hours.

Steinway filed two motions to dismiss in this case. The Court previously deducted

---

[9] The Court notes that this case was governed by General Order 17-08, which generally required parties to "file answers . . . within the time set forth in Rule 12(a)(1)-(3) even if they have filed or intend to file a motion to dismiss." (Doc. 4.)

the time Steinway spent preparing its motion to dismiss the Rindlisbachers' contract claim. *See supra* Part III.D.2.d.i. As to the motion to dismiss the Rindlisbachers' tort claims, Steinway spent approximately 31.6 hours preparing the motion and 35.6 hours preparing the reply in support thereof. The Court finds that both expenditures are excessive and therefore unreasonable. In the Court's experience, 25 hours is a reasonable amount of time to prepare a motion to dismiss under the circumstances of this case, and 18 hours is a reasonable amount of time to prepare the corresponding reply. Accordingly, the Court will reduce Mr. Samuels' time by 1.6 hours and associate time by 22.6 hours.

The Court next assesses the time spent preparing Steinway's *Daubert* motion. Steinway expended roughly 71.8 hours preparing its *Daubert* motion and 17.4 hours preparing the reply in support thereof. These filings were largely prepared by Mr. Samuels. In the Court's experience, the *Daubert* motion should have required, at most, 40 hours to complete and the reply should have required no more than 12 hours to prepare. The Court will accordingly reduce Mr. Samuels' time by 33.9 hours.

Steinway filed two motions for summary judgment in this case. The billing entries do not consistently differentiate between whether the time expended relates to Steinway's motion for summary judgment on the issue of liability or motion for summary judgment on the issue of damages. In total, Steinway spent 281.2 hours preparing the motions. The Court finds this amount to be excessive. In the Court's experience, the summary judgment motions should have taken no more than 180 hours, in total, to complete. The Court also finds that Steinway spent an excessive amount of time preparing its reply in support of its motion for summary judgment on the issue of damages. Steinway spent 33.5 hours preparing that filing. In the Court's experience, 20 hours for such task is reasonable. Steinway expended 58.5 hours preparing a supplemental brief on an issue related its motion for summary judgment on the issue of liability. The Court concludes this supplemental brief should have required no more than 45 hours to complete. In addition, Steinway spent approximately 38.2 hours preparing for oral argument on the summary judgment motions, which the Court deems excessive. In the Court's experience, no more than 30 hours would

be needed to prepare for oral argument, especially given the amount of time counsel had already spent preparing the motions. Accordingly, the Court will reduce Mr. Samuels' time by 37.6 hours, associate time by 90.7 hours, and paralegal time by 8.1 hours.

Steinway also spent a considerable amount of time preparing for various depositions in this case. For example, Steinway expended 32.5 hours preparing for and participating in Mr. Snyder's deposition, 33 hours preparing for and participating in Mr. Perry's deposition, 76 hours preparing for and participating in Mr. Rindlisbacher's deposition, and 43.7 hours preparing for and participating in Mr. Edds' deposition. The depositions of Mr. Snyder, Mr. Perry, and Mr. Edds should have each required no more than 25 hours of preparation. The deposition of Mr. Rindlisbacher reasonably required 50 hours of preparation. Accordingly, the Court will reduce Mr. Samuels' time by 51.7 hours, associate time by 5.4 hours, and paralegal time by 3.1 hours.

### 3.  Lodestar Figure

In sum, the Court concludes that the hourly billing rates charged by Steinway's counsel and counsel's staff are reasonable. After the Court's discretionary deduction of hours not reasonably expended, the Court finds that 2,457 hours is a reasonable amount of time to spend on a case of this type, which has been ongoing for almost three years. *See, e.g.*, *Lexington Ins. Co. v. Scott Homes Multifamily Inc.*, No. CV-12-02119, 2016 WL 5118316, at *18 (D. Ariz. Sept. 21, 2016) (concluding that the 2,891.7 hours that a defendant's counsel expended while litigating a case lasting more than three years was reasonable). Under the lodestar method, the Court multiplies the number of hours expended by the timekeeper's hourly rate. The Court's calculation of the lodestar figure follows:

| Timekeeper | Rate | Hours Expended | Total |
|---|---|---|---|
| Partner | $450 | 977 | $439,650.00 |
| Associates | $275 | 1216 | $334,400.00 |
| Paralegals | $195 | 264 | $51,480.00 |
|  |  | **Lodestar Figure** | $825,530.00 |

The lodestar figure is therefore $825,530.00.

In addition, Steinway requests $5,846 for Westlaw charges. The Arizona Supreme Court "permits recovery of computerized research expenses as 'an element of an award of attorneys' fees.'" *Ahwatukee Custom Ests. Mgmt. Ass'n, Inc. v. Bach*, 193 Ariz. 401, 404 (1999) (quoting *Matter of Liquidation of Azstar Cas. Co.*, 189 Ariz 27, 29 (App. 1996)). Because "[c]onducting legal research requires training and legal knowledge to achieve the desired results," Arizona courts find it "fair and more reasonable to characterize this activity as a service rendered by an attorney . . . to a specific client rather than an overhead expense to be shared by all clients." *Id.* at 403–04. Steinway avers "a substantial amount of Westlaw charges—$13,482—were written off as a courtesy." (Doc. 255 at 16 n.6.) To account for computerized research associated with defending the Rindlisbachers' breach of contract claim and research-related time entries that the Court has otherwise deducted, the Court will reduce the computerized research charges by approximately 35%, such that Steinway may recover $3,800 for Westlaw charges.

### 4.    Additional Factors

After calculating the lodestar figure, the Court may adjust that value considering the factors set forth in Rule 54.2 of the Local Rules of Civil Procedure. LRCiv 54.2(c). Those factors include: (1) "[t]he time and labor required of counsel;" (2) "[t]he novelty and difficulty of the questions presented;" (3) "[t]he skill requisite to perform the legal services properly;" (4) "[t]he preclusion of other employment by counsel because of the acceptance of the action;" (5) [t]he customary fee charged in matters of the type involved;" (6) "[w]hether the fee contracted between the attorney and the client is fixed or contingent;" (7) "[a]ny time limitations imposed by the client or the circumstances;" (8) "[t]he amount of money, or the value of the rights, involved and the results obtained;" (9) "[t]he experience, reputation and ability of counsel;" (10) "[t]he 'undesirability' of the case;" (11) "[t]he nature and length of the professional relationship between the attorney and the client;" (12) "[a]wards in similar actions;" and (13) "[a]ny other matters deemed appropriate under the circumstances." LRCiv 54.2(c)(3)(A)–(M). Steinway discusses the

Rule 54.2 factors in the pending motion. (Doc. 255 at 12–18.) The Rindlisbachers do not specifically address the factors in their response. (*See* Doc. 268.) The Court notes that several of the aforementioned factors are interwoven in the Court's analysis of reasonability. The Court has further considered the factors to the extent they are applicable and concludes that an additional enhancement or reduction in the fee award is not warranted. Accordingly, the Court will award Steinway $829,330.00 in attorneys' fees.

**IV.    CONCLUSION**

The Court has itemized its reductions to Steinway's fee award in the spreadsheets attached as appendices to this Order.

For the foregoing reasons,

**IT IS ORDERED** that the Clerk of the Court shall file this Order under seal.

**IT IS FURTHER ORDERED** that Steinway's Motion for Attorneys' Fees (Doc. 255) is **granted in part** and **denied in part**.

**IT IS FURTHER ORDERED awarding** Steinway $829,330.00 in attorneys' fees.

**IT IS FURTHER ORDERED** that this Order will remain under seal for 14 days from today's date. This Order will be automatically unsealed on June 10, 2021, unless prior thereto the parties jointly file a copy of this Order, unsealed, redacting only the information that must remain sealed consistent with the prior Orders of the Court allowing certain information to be filed under seal. Each party will be responsible for identifying and redacting its own information. If the unsealed, redacted order is filed within the deadline, the parties shall simultaneously submit a joint supplemental brief stating the legal authority that justifies each redaction. If the parties file the unsealed, redacted order within the deadline, the Clerk of the Court shall leave this order under seal while the Court reviews the parties' supplemental brief. The parties are advised that the Court's preference is to have this Order filed, in its entirety, on the public docket.

\ \ \

\ \ \

\ \ \

1       **IT IS FINALLY ORDERED** that the Clerk of Court shall send copies of this Order

2   to only:

3
        Kenneth Layne Morrill
4       Morrill Law PLC
        8857 N 63rd Pl.
5       Paradise Valley, AZ 85253

6
        Bruce Edward Samuels
7       Papetti Samuels Weiss LLP
        15169 N Scottsdale Rd., Ste. 205
8       Scottsdale, AZ 85254

9
        Heather Lee Stanton
10      Lewis Roca Rothgerber Christie LLP
        201 E Washington St., Ste. 1200
11      Phoenix, AZ 85004

12
        Dated this 26th day of May, 2021.
13

14

15                                          _Michael T. Liburdi_

16                                          Michael T. Liburdi
                                            United States District Judge
17

18

19

20

21

22

23

24

25

26

27

28

- 29 -